**TAGGED FOR PUBLICATION**



**ORDERED in the Southern District of Florida on July 21, 2015.**

**John K. Olson, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

**In re**:

**OCEAN 4660, LLC,**

                                                        Case No. 13-23165-JKO

                                                        Chapter 11

                    Debtor.

_____

### ORDER DENYING MOTION FOR DISQUALIFICATION [ECF 394]

This case is before the Court on Kenneth A. Frank's Motion (the "Motion") [ECF 394] for disqualification of this judge.  The Motion seeks disqualification "pursuant to 28 U.S.C. section(s) 144 and 455, and the Due Process Clauses of the United States Constitution, Amendments V and IX."  Mr. Frank alleges that disqualification is required because (1) the Court's "impartiality might be reasonably questioned;" (2) the Court "has a personal bias and prejudice concerning a party and/or counsel for the party;" (3) the Court "has a substantial association with the law firm representing the Chapter 7 Trustee, Maria Yip;" and (4) "the Court's actions from the inception display a deep-seated favoritism and antagonism that make fair judgment impossible."

**Adversary Proceeding 13-1641**

Adversary Proceeding 13-1641, *Yip v. El Mar Associates, Inc., and Kenneth A. Frank,* was filed by Trustee Yip on September 3, 2013.  In that action, the Trustee sought a determination that a lease (the "Lease") between the Debtor and El Mar Associates, Inc. ("El Mar") was invalid and unenforceable and sought a temporary restraining order and preliminary and permanent injunction prohibiting El Mar and Mr. Frank from interfering with the Trustee's operation of the Debtor's hotel property located in Lauderdale-By-The-Sea, Florida.  A Temporary Restraining Order [ECF 10] was entered on September 5, 2013, after service of the relevant pleadings on Mr. Frank at his email address.[1]  An evidentiary hearing on the motion for preliminary injunction was scheduled and held on September 12, 2013.  El Mar and Mr. Frank were represented by counsel at the hearing, and the parties agreed to the entry of a preliminary injunction [ECF 17] by Order entered September 17, 2013.

Mr. Frank apparently complains that the TRO was entered on an *ex parte* basis.  Although counsel for Trustee Yip sent the relevant pleadings to Mr. Frank at his email address, there is nothing unusual or irregular in the entry of a TRO without notice.  The Trustee's allegations in support of the TRO were that Mr. Frank had threatened the operations of the hotel.  In these circumstances, entry of a TRO without notice is entirely appropriate.  The propriety of its entry was in any event vindicated by the consensual entry of a Preliminary Injunction.

By Order [ECF 4] entered September 4, 2013, and Supplemental Order [ECF 58] setting trial and related deadlines, the Court fixed various deadlines for the filing of witness and exhibit lists, a joint pretrial stipulation, motions *in limine* or to strike, and pretrial memoranda.  The Supplemental

---

[1]The pleadings were also mailed to Mr. Frank but it is virtually certain that the TRO was entered before Mr. Frank could have received them in the mail.

Order specifically provided that failure to comply with the requirements of the scheduling orders could result in the striking of pleadings, dismissal, or entry of default. Although represented by counsel,[2] El Mar and Mr. Frank failed to comply with the deadlines. Indeed, their witness and exhibit lists and trial memorandum were not filed until November 19, 2013, the day before trial. Trustee Yip immediately moved [ECF 79, 80, 81] to strike the late-filed documents. The Trustee's motions to strike were granted at trial by Orders [ECF 84, 86] entered November 21 and 22, 2013. The striking of these pleadings was entirely appropriate under the Court's inherent authority to conduct trials and to supervise proceedings before it.

Trial on Adversary Proceeding 13-1641 was conducted on November 20, 2013. As a result of trial, the Court ruled by Order [ECF 85] entered November 21, 2013, and Final Judgment [ECF 87] entered November 22, 2013, that El Mar's lease granted by the Debtor was invalid and unenforceable. This determination was critical in the broad context of the case. The Trustee contended, and the evidence adduced at trial established, that the lease was so financially disadvantageous to the Debtor and its estate that it amounted to a fraudulent transfer and that its validity would materially adversely affect the value of the Debtor's hotel by millions of dollars.

Mr. Frank, *pro se*, timely filed a Notice of Appeal [ECF 100] on December 2, 2013, and sought entry of a stay pending appeal [ECF 101]. El Mar did not appeal. Mr. Frank was not a party to the lease between El Mar and the Debtor, so exactly what relief Mr. Frank could have obtained

---

[2]El Mar and Mr. Frank were represented by Kevin C. Gleason, Esquire. Mr. Gleason sought to withdraw as counsel by motion [ECF 61] filed November 7, 2013. Mr. Frank, *pro se* and purporting to represent El Mar, objected to Mr. Gleason's withdrawal, which Mr. Frank characterized as arising out of a dispute regarding fees. The Court denied the motion to withdraw by Order [ECF 69] entered November 18, 2013. Mr. Gleason appeared at trial for Mr. Frank and El Mar. Mr. Gleason has at various other times sought to withdraw, been permitted to withdraw, and has reappeared for Mr. Frank, El Mar, and Oceanside Lauderdale, Inc., another entity controlled by Mr. Frank.

on appeal is unclear.  In any event, the Notice of Appeal and motion for stay pending appeal were withdrawn [ECF 110, 111] by pleadings filed December 3, 2013.  The Order [ECF 85] and Final Judgment [ECF 87] are now final.

There is no trial transcript in the record.  The Court did strike Mr. Frank's and El Mar's untimely motions, lists and brief, as was appropriate in the circumstances, and conducted the trial in a professional and appropriate manner.

### Relationships with attorneys and other professionals

**Drew Dillworth.**  Prior to my appointment to the bench effective in February 2006, some nine and a half years ago, I was for 18 years a shareholder in the Tampa office of Stearns Weaver Miller.  Drew Dillworth, Trustee Yip's counsel in this case, is currently a shareholder in the Miami office of Stearns Weaver.  My tenure at the firm overlapped with his by 5 or 6 years.  I never socialized with Mr. Dillworth other than at firm  functions while I was a lawyer at Stearns Weaver, and I have never socialized with Mr. Dillworth other than at Bar functions since I became a judge.

These facts cannot form a basis for disqualification.  As the Seventh Circuit has explained, "friendships among judges and lawyers are common" and "a judge need not disqualify himself just because a friend – even a close friend – appears as a lawyer."  *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985).  Recusal was required in *Murphy* because the extent of intimacy between the judge and lawyer was "unusual" and an objective observer might reasonably doubt the judge's impartiality when "he was such a close friend of the prosecutor that the families of both were just about to take a joint vacation."  *Id.* at 1538.  Even so, the Seventh Circuit chose not to reverse the trial judge's denial of the disqualification motion because it was inexcusably untimely.  Much of what Mr. Frank complains of in his Motion occurred in 2013; the Motion was filed March 30, 2015, and appears to be materially untimely.

Mr. Frank states in paragraph 21 of the Motion that Mr. Dillworth serves as a court appointed fiduciary in this Court and that I preside over matters in which Mr. Dillworth is the court appointed fiduciary. Mr. Frank notes[3] that I serve as Chair of the Abuse of the Bankruptcy Process Subcommittee of the Business Bankruptcy Committee of the American Bar Association. None of these facts suggest a basis for recusal.

**Kevin Gleason.** Mr. Gleason has, at various times, represented both El Mar and Mr. Frank in this case. He has sought to withdraw as counsel for one or both at various times and currently does not represent either. Mr. Frank contends that the Court is hostile to Mr. Gleason as a result of "bad blood" stemming from another case. In that case, *In re New River Dry Dock, Inc.*, Case No. 06-13274, Mr. Gleason was sanctioned for improper conduct toward this judge in an Order [ECF 680] signed by all seven of the judges on this Court following an *en banc* evidentiary hearing and affirmed on appeal by the District Court and by the Court of Appeals. That same conduct resulted in a public reprimand by the Florida Supreme Court.

Parties and their lawyers sometimes behave in ways that predictably engender a judge's animus, but such behavior does not trigger the need for disqualification. To hold otherwise would be to create an opportunity for parties to exhibit hostile behavior strategically, as a means to force disqualification. Upholding a refusal to disqualify where the litigant had verbally attacked the judge in public, the First Circuit said that "[a] party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against [her]." *FDIC v. Sweeney*, 136 F.3d 216, 219 (1st Cir. 1998). Indeed, where a party argued that the judge's ongoing hostility toward him required disqualification, the Third Circuit held that the party's own public hostility toward the judge counseled *against* disqualification "lest we encourage tactics

---

[3]In somewhat garbled form.

designed to force recusal." *United States v. Bertoli*, 40 F.3d 1384, 1414 (3d Cir. 1994). It is perhaps notable that it is Mr. Frank, not Mr. Gleason, who seeks recusal in this case. In any event, Mr. Frank's assertions regarding the Court's relationship with Mr. Gleason do not require disqualification.

**Entry of orders granting *ex parte* motions.** Federal Rule of Bankruptcy Procedure 9003 prohibits "ex parte meetings and communications with the court concerning matters affecting a particular case or proceeding." A distinction must be made between *ex parte* meetings and communications, on the one hand, and *ex parte* motions, on the other: the former are prohibited and the latter are not. Federal Rule of Bankruptcy Procedure 7065, generally applying Federal Rule of Civil Procedure 65, expressly permits the entry of temporary restraining orders under the circumstances which existed in Adversary Proceeding 13-1641.[4] Each of the other motions of which Mr. Frank complains were in connection with the retention of professionals and other administrative matters which are expressly permitted to be considered on an *ex parte* basis pursuant to Local Rule 9013-1(C). Nothing about the entry of these *ex parte* orders was irregular or improper, let alone a basis for recusal.

Mr. Frank suggests in paragraph 16 of the Motion that a Meeting of Creditors was conducted without notice to him and that "[o]n an *ex parte* basis, at the meeting of creditors, it was determined that a Creditors Committee would not be appointed." Meetings of creditors pursuant to 11 U.S.C. § 341 in Chapter 11 cases are conducted by the United States Trustee and not the Court. Indeed, § 341(c) provides that "[t]he court may not preside at, and may not attend" any meeting of creditors. Similarly, the decision to appoint a creditors committee in a Chapter 11 case is within the power of

---

[4]Mr. Frank can hardly complain about the entry of a TRO in that adversary proceeding when he and El Mar thereafter consented to the entry of a Preliminary Injunction, thereby conceding that injunctive relief was appropriate.

the United States Trustee pursuant to 11 U.S.C. § 1102 unless a party in interest requests that the Court order the United States Trustee to change the makeup of a committee. Neither Mr. Frank nor any other party in interest made such a request.

**Disparate treatment.** In paragraph 51 of the Motion, Mr. Frank complains that the Court permitted creditor Kari Campo to liquidate her claim in state court but unjustly refused to grant him the same relief, *i.e.,* the liquidation of his claim in state court. The Campo claim was a personal injury claim and the Bankruptcy Court has no jurisdiction to try personal injury tort or wrongful death claims pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5); stay relief to proceed against insurance, if any, or to liquidate the claim in a court of competent jurisdiction was granted [ECF 196] because this Court lacked jurisdiction to adjudicate the claim.

On September 23, 2014, Mr. Frank[5] filed a motion [ECF 334] seeking stay relief to continue litigation he had filed in 2010 in the Circuit Court for Broward County asserting some 18 separate causes of action against the Debtor, including breach of contract, wrongful eviction, and a variety of business torts. At Mr. Frank's request, the Court conducted a hearing on the stay relief motion on shortened notice on September 30, 2014, and denied it by Order [ECF 339] entered October 3, 2014. Mr. Frank's stay relief motion sought to liquidate claims over which this Court has core jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B). Because Mr. Frank's claims are within this Court's jurisdiction and Ms. Campo's claim is not, disparate treatment was entirely appropriate.

---

[5]The Frank stay relief motion was filed by Mr. Frank individually and on behalf of Oceanside Lauderdale, Inc., an entity which he controls. Mr. Frank is not a lawyer and he cannot represent a corporate entity. *See Osborn v. Bank of the United States*, 22 U.S. 738, 829-30 (1824).

**Fee applications**

In paragraphs 69, 70, 80, 81, 89, 126,127, and 129-33, Mr. Frank complains that the

Court improperly awarded fees that grossly overcompensated Mr. Dillworth, Stearns Weaver,

Ms. Rin, Trustee Yip, and Yip Associates.

This Court properly awarded fees, as discussed in this Court's Omnibus Order Granting

Fee Applications for Compensation [ECF 387], pursuant to 11 U.S.C. §§ 326, 328, 330, and 331.

The fees awarded in this case are entirely reasonable.[6]

**Approval of settlement with Comerica Bank**

Comerica Bank held a valid and perfected mortgage lien on the Debtor's hotel.  The balance

of the loan secured by that mortgage on the petition date was $11,941,376.29 (the "Petition Date

Balance").  The value of the hotel on the petition date was an estimated $13.2 million.  As a result

of a successful auction process conducted by the Trustee and her professionals, the hotel was sold

to a third party for $17,000,000.  The Court entered an Order (the "Sale Order") [ECF 178]

approving the sale on December 12, 2013.  The Sale Order authorized the payment at closing of

various expenses associated with the sale and the payment of the Petition Date Balance to Comerica.

By Motion (the "Comerica Motion") [ECF 228] to Determine Amount and Allowance of Its

Remaining Secured Claim, Comerica sought a determination that it was entitled to some $2.25

million of additional sale proceeds.  The Trustee responded [ECF 243]; El Mar, Oceanside, and Mr.

Frank cross-moved [ECF 244], seeking a determination that Comerica should be allowed a secured

claim in a lesser but unspecified amount.  The Court continued hearings on the Comerica Motion

and responses in order to give the parties an opportunity to mediate.  Mediation was conducted by

---

[6]The Court notes that the fees in this case would not be nearly as high if it were not for
the extensive and erroneous pleadings filed by Mr. Frank and his counsel throughout this case.

the Honorable Herbert Stettin on May 13, 2014.  Comerica and Mr. Frank/El Mar/Oceanside reached

impasse [ECF 270]; Comerica and the Trustee reached a settlement [ECF 269] which was the

subject of the Trustee's Motion (the "Settlement Motion") [ECF 273] to compromise the controversy

with Comerica pursuant to Bankruptcy Rule 9019.  The Court conducted an evidentiary hearing on

the Settlement Motion on June 12, 2014, and granted it by Order (the "Settlement Order") [ECF

286] entered June 13, 2014.  Pursuant to that Order, the Trustee was authorized and directed to pay

an additional $1.85 million to Comerica on account of its secured claim.

On July 2, 2014, Mr. Frank[7] filed a Notice of Appeal [ECF 292] and a Motion to Extend

Time to Appeal (the "Motion to Extend Time")  [ECF 291].  Pursuant to Bankruptcy Rule 8002(a),

the deadline for the filing of a notice of appeal from the Settlement Order was June 27, 2014.

Pursuant to Bankruptcy Rule 8002(c)(2), a motion seeking an extension of the appeal deadline may

be filed after the deadline in Rule 8002(a) has expired, but only upon a showing of excusable

neglect.  The Trustee [ECF 308] and Comerica [ECF 309] objected to the Motion to Extend Time

(a) because there was no showing of excusable neglect, and (b) Mr. Frank failed to timely file a

designation of the record and issues on appeal as required by Bankruptcy Rule 8006.[8]  The Court

conducted a hearing on July 29, 2014, and denied it by Order [ECF 311] entered August 4, 2014.

That Order also struck the Notice of Appeal [ECF 292] as untimely.  These rulings were entirely

consistent with applicable law and cannot form a basis for recusal.  Indeed, pursuant to Local Rule

---

[7]The Notice of Appeal [ECF 292] was purportedly filed by Mr. Frank *pro se* on his own
behalf and *"pro se"* on behalf of El Mar and Oceanside.  Mr. Frank cannot represent corporate
entities.  *Osborn v. Bank of the United States*, *supra*.  At the hearing held July 29, 2014, Mr.
Gleason appeared for El Mar and Oceanside and withdrew the Notice of Appeal as to them.

[8]Pursuant to Local Rule 87.4 of the District Court, the Bankruptcy Court is "authorized
and directed" to dismiss appeals in the event an appellant fails to timely designate the record and
issues on appeal.

87.4 of the District Court, this Court had no discretion in the matter and was *required* to dismiss the appeal. *See In re Fountainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 733 (S.D. Fla. 2010). Mr. Frank timely filed a Notice of Appeal [ECF 316] from the Order [ECF 311] which denied the Motion to Extend Time. That appeal is pending in the District Court as *Frank v. Yip,* Case No. 14-cv-62223-WJZ.

**Trustee election dispute**

Following conversion of this case to a case under Chapter 7 by Order [ECF 340] entered October 3, 2014, the United States Trustee appointed [ECF 344] Ms. Yip as interim Chapter 7 Trustee. A meeting of creditors was conducted by the United States Trustee on November 12, 2014. Thereafter, the United States Trustee filed a Report of Disputed Election [ECF 358] pursuant to 28 U.S.C. § 586(a)(3) and Bankruptcy Rule 2003(d), thereby advising the Court that a dispute in connection with an attempted election of a Chapter 7 trustee under 11 U.S.C. § 702 had occurred at the meeting of creditors. El Mar and Oceanside, represented by Mr. Gleason, filed a motion [ECF 359] seeking a resolution of the disputed election. Mr. Frank similarly sought review of the disputed election by motion [ECF 361]. After responses and briefing, and following a hearing on March 18, 2015, the Court ruled by Order [ECF 389] entered March 23, 2015, that there had been no valid election and that Ms. Yip was accordingly the Chapter 7 Trustee. The Motion to disqualify this judge [ECF 394] was filed one week later, on March 30, 2015, and a Notice of Appeal [ECF 397] was timely filed on April 6, 2015.

**Constitutional claims**

Mr. Frank asserts in the first page of the Motion to Disqualify that he seeks disqualification pursuant to "the Due Process Clauses of the United States Constitution, Amendments V and IX."[9] There is no further reference to these constitutional claims in the Motion and they appear to have been abandoned. No further discussion is required.

**Recusal standards**

Federal Rule of Bankruptcy Procedure 5004 makes clear that the disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455.[10] Section 455(a) speaks in general terms and requires the recusal of a federal judge, including a bankruptcy judge, "in any proceeding in which his impartiality might reasonably be questioned," thus requiring recusal not only where the judge has *actual* bias[11] but also where he or she has acted in such a way as to give the appearance of partiality to a reasonable person. *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 113-14 (7th Cir. 1977). The appearance of impartiality is virtually as important as the fact of impartiality. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977). It is of no consequence that the judge is not actually biased, inasmuch as § 455 concerns not only fairness to individual litigants but also the public's confidence in the judiciary, which could be irreparably harmed if a case were allowed to proceed before a judge who appears to be tainted. *In re Kensington Intern. Ltd.*, 353 F.3d

---

[9]The Fifth Amendment to the Constitution deals with the rights of persons in criminal cases. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Neither Amendment has any relevance to the question of judicial disqualification.

[10]Although cited by Mr. Frank as a basis for recusal of this judge, 28 U.S.C. § 144 applies by its express terms only to district judges. No further discussion of § 144 is required.

[11]By contrast, a showing of actual bias is required under 28 U.S.C. § 144, which by its express terms governs only "any proceeding in a district court."

211 (3d Cir. 2003); *on remand* 305 B.R. 175 (D. Del. 2004); *opinion after remand* 368 F.3d 289 (3d Cir. 2004).

A judge's rulings and expressions of opinion generally fail to justify recusal.  As the Eleventh Circuit has put it, "adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt."  *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001).  Of course judges hold and express opinions about the litigants and issues that they have formed during court proceedings.  But as the Supreme Court succinctly stated in *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966): "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source . . . other than what the judge learned from his participation in the case."

*Grinnell* was decided prior to the enactment of the 1974 amendments which create the current version of § 455(a).  In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court extended the "extrajudicial source" doctrine in *Grinnell* to recusal under § 455(a).  Just prior to his second trial, the criminal defendant in *Liteky* moved to disqualify the judge on the grounds that, during the earlier trial, the judge displayed "impatience, disregard for the defense and animosity" toward the defendant.  *Id.* at 555.  The Supreme Court rejected the contention that recusal was required:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id.* (internal citations omitted).

Mr. Frank is unhappy with a variety of rulings which this Court has made in the course of this two-year-old case.  He attributes these rulings to bias against Mr. Gleason and bias in favor of Mr. Dillworth.  The former allegedly stems from misconduct by Mr. Gleason which resulted in his sanctioning by this Court *en banc*, affirmed by the District Court and the Eleventh Circuit, and his sanctioning by the Florida Supreme Court.  Bad conduct by parties or their counsel does not trigger the need for disqualification of a judge.  The latter allegedly stems from the fact that I formerly practiced in the law firm which now represents Trustee Yip, a firm which I left upon appointment to the bench effective in February 2006.  There are no cases which require the recusal of a judge on such grounds.

In fact, and by any rational and objective analysis, the rulings made by this Court were on the merits and were entirely consistent with applicable law.  The Motion for Disqualification, although long, is without merit and it is hereby **DENIED.**

###

Copies to: All parties in interest.

-13-