

**ORDERED in the Southern District of Florida on August 1, 2017.**

John K. Olson, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

Case No. 13-23165-JKO

OCEAN 4660 LLC,

Chapter 7

     Debtor.

_____/

**ORDER SANCTIONING KENNETH A. FRANK PURSUANT TO
28 U.S.C. § 1927 FOR UNREASONABLY AND VEXATIOUSLY
MULTIPLYING PROCEEDINGS, DIRECTING TRUSTEE YIP
TO FILE A BILL OF COSTS, ETC., FINDING KENNETH A. FRANK
TO HAVE ACTED IN BAD FAITH, PROHIBITING FILINGS BY
HIM, AND DIRECTING CLERK TO TAKE CERTAIN ACTIONS**

This Chapter 7 case came on for hearing before the Court on January 19, 2017, on the

Court's Order to Show Cause [ECF 524], entered May 26, 2016, which directed Kenneth A. Frank

to show cause why he should not be sanctioned pursuant to 28 U.S.C. § 1927 for unreasonably and

vexatiously multiplying the proceedings in this bankruptcy case.

Frank has challenged virtually every step of this case, starting during its time in Chapter 11

and continuing thereafter to stymie the case's Chapter 7 liquidation process. He has relentlessly and falsely accused the Trustee, Maria Yip, and her counsel of nonfeasance and malfeasance. Even after his contentions have been found by this Court to be untrue, and those findings have been affirmed on appeal, he has continued to accuse the Trustee of wrongdoing without offering any evidence in support of his accusations.   In doing so, he has gone so far beyond the reasonable boundaries of litigation that his actions have passed the high burden of unreasonable and vexatious multiplication of these proceedings as to warrant the imposition of sanctions under 28 U.S.C. § 1927.

## Background

This case was filed [ECF 1] as a voluntary Chapter 11 case on June 2, 2013.   The Debtor owned a beachfront hotel (the "Hotel") in Lauderdale-by-the-Sea, Florida, with 147 guestrooms, a beachfront tiki bar and grill (the "Tiki Bar"), an adjoining restaurant and commercial kitchen, and on-site parking.   The filing was precipitated by a mortgage foreclosure action brought by Comerica Bank and very extensive code violations asserted by the Town of Lauderdale-by-the-Sea. Despite excellent representation by its counsel, Genovese, Joblove & Battista, P.A., the case quickly floundered over management issues beyond counsel's control. Comerica Bank and the United States Trustee sought appointment of a Chapter 11 Trustee by separate motions [ECF 52, 54, 55] filed July 9, 2013.   With the Debtor's acquiescence, the Court directed the United States Trustee to appoint a Chapter 11 Trustee by Order [ECF 56] entered July 10, 2013.   Maria Yip was appointed [ECF 57] as Chapter 11 Trustee on July 12, 2013.   The Court approved the appointment by Order [ECF 61] entered July 15, 2013.   Trustee Yip promptly sought [ECF 68], and the Court authorized [ECF 70], the retention of Drew Dillworth, Esquire,

2

and Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., as Trustee's counsel.

**The Tiki Bar Lease**

The Trustee quickly concluded that the value of the Hotel was substantially depressed by the existence of a purported lease of the Tiki Bar by the Debtor to El Mar Associates, Inc., a Florida corporation owned by Frank. The Trustee accordingly moved to reject the lease by Motion [ECF 98] (the "Motion to Reject") timely filed August 23, 2013. On September 3, 2013, the Trustee brought Adversary Proceeding 13-1641 against El Mar and Frank for declaratory judgment, determination of the validity of the El Mar lease, avoidance of a fraudulent transfer, and injunctive relief. After trial on the Motion to Reject in the Adversary Proceeding, the Court granted the Motion to Reject the Tiki Bar lease by Order [ECF 154] entered November 22, 2013, and determined that the Tiki Bar lease was invalid in Adversary Proceeding 13-1641 by Order [ECF 85] entered November 21, 2013, and Final Judgment [ECF 87] entered November 22, 2013. No notice of appeal was filed seeking appellate review of the Order [ECF 154] that granted the Motion to Reject. Frank, *pro se* and purporting to act only on behalf of himself (although he was not a party to the purported lease, which was solely between the Debtor and El Mar[1]), timely filed a Notice of Appeal [ECF 100] in the Adversary Proceeding on December 2, 2013. Frank (again acting *pro se* and asserting that he "is a Director of El Mar Associates, Inc.") simultaneously sought entry of a stay pending appeal in a 155-page Motion for Stay Pending Appeal [ECF 101], filed December 2, 2013, in the Adversary Proceeding. On December 3, 2013, Frank withdrew the Motion for Stay [ECF 101] by formal Withdrawal [ECF 110], filed December 3, 2013, and simultaneously withdrew the Notice of Appeal by formal Withdrawal [ECF 111]. No further

---

[1] Exhibit A to Complaint [ECF 1] in Adv. Pro. 13-1641.

review by way of motion for reconsideration or appeal was ever sought by Frank or El Mar, and the effect of the withdrawals of the Notice of Appeal and the Motion for Stay Pending Appeal was that this Court's determination that the lease was both invalid and rejected became final.

### Sale of the Hotel

Meanwhile, on October 29, 2013, the Trustee filed her motion (the "Motion to Sell") [ECF 135] in the main case seeking to sell the Hotel, including the Tiki Bar, by competing bid and free and clear of all liens, claims, encumbrances, and interests. The Court granted in part the Motion to Sell by Order [ECF 146] (the "Sale Procedures Order") entered November 13, 2013, setting bidding and sale procedures and scheduling an auction sale hearing for December 3, 2013. On November 27, 2013, Frank and another of his entities, Oceanside Lauderdale, Inc., filed an Objection[2] [ECF 158] to the Motion to Sell. El Mar, through counsel, also Objected [ECF 160] on November 30, 2013. Trustee Yip conducted the auction sale on December 3, 2013.   Four bidders participated in the auction; their respective bids are produced on Trustee Yip's Bidding Summary [ECF 173], filed December 3, 2013. The final winning bid was in the all-cash amount of $17 million. This price was several million dollars in excess of the parties' expectations; the price obtained was greeted with universal jubilation from all parties, including Frank and his entities. The Objections of El Mar and of Frank and Oceanside were thereupon immediately withdrawn by formal Withdrawals [ECF 175, 176] filed by counsel on December 3, 2013. The Court approved the sale of the Hotel (including the Tiki Bar) by Order [ECF 178] (the "Final Sale Order") entered

---

[2] Frank purported to file this pleading *pro se* on his own behalf and on behalf of Oceanside, a corporation, as its president. The law in the United States has been clear since at least 1824 that a corporation can be represented in federal courts only by an attorney licensed to practice in the jurisdiction. *Osborn v. Bank of the United States*, 22 U.S. 738, 829-30 (1824), *Palazzo v. Gulf Oil Corporation*, 775 F.2d 304 (11th Cir. 1985), *In re Las Colinas Dev. Corp.*, 585 F.2d 7 (1st Cir. 1978).

December 12, 2013. Among other things, the Final Sale Order authorized Trustee Yip to pay certain real estate tax obligations (which exceeded $750,000), the break-up fee to the stalking horse bidder of $200,000, the broker's commission of $595,000, and the sum of $11,941,376.29 to Comerica Bank for loan principal amounts outstanding, together with tax, insurance, and ground lease rent payment which had been advanced by Comerica.   No motion for reconsideration or appeal was sought from the Final Sale Order, which became final by operation of law on December 26, 2013.   The sale closed in the final days of 2013, and Trustee Yip made the payments authorized in the Final Sale Order.

On February 24, 2014, the Trustee filed a Chapter 11 Plan [ECF 212] and a Motion to Waive Disclosure Statement Requirement [ECF 213], which indicated that there was approximately $3.6 million in remaining Sale proceeds. The Plan ultimately proved impossible to confirm because of Frank's continuing obstruction. In order to minimize administrative expenses and to preserve as much value as possible for creditors, the Trustee moved to convert the case to Chapter 7 by Motion [ECF 331] filed September 22, 2014.   The case was converted, by Order [ECF 340] entered October 3, 2014, to a case under Chapter 7 after hearing conducted September 30, 2014.   Chapter 11 Trustee Yip was appointed [ECF 344] as Interim Chapter 7 Trustee by the United States Trustee on October 6, 2014.

### Valuation of Comerica's Claim

On February 28, 2014, Comerica Bank filed its Motion to Value and Determine Secured Status of Lien (the "Motion to Value") [ECF 228].   Comerica sought to recover $2.25 million as a secured claim in addition to the $11,941,376.29 that it had previously been paid on account of its secured claim.   The additional amount sought included default interest and attorneys' fees.

Trustee Yip filed a Preliminary Response [ECF 243] to the Motion to Value on March 28, 2014.   Trustee Yip noted that, after payment of then-anticipated administrative expenses of some $1.35 million, the effect of payment to Comerica of the additional $2.25 million the Bank sought would be that "there will be virtually nothing available for any other constituency in this case."

On March 28, 2014, Frank, El Mar, and Oceanside, through counsel, for the first time and "upon information and belief," raised questions by Cross-Motion [ECF 244] concerning whether Comerica Bank had properly accounted for payments made to it by the Debtor under an interest rate swap agreement (the "Swap Agreement") and whether Comerica had properly accounted for "any 'profit'" on its disposition of allegedly cross-collateralized property owned by Tropic Ranch, Inc., an entity owned at relevant times by principals of the Debtor.   These perfectly appropriate questions did not allege any wrongdoing by Comerica or the Trustee and were raised in the context of Comerica's Motion (the "Motion to Value") [ECF 228] seeking determination of the amount and allowance of its secured claim.

At a hearing on the Motion to Value conducted April 1, 2014, the Court was advised that the parties wished to pursue a mediated settlement. Accordingly, and by Order [ECF 256] entered April 14, 2014, the Court set a further status conference on the Motion to Value for May 14, 2014, and ordered:

> At the status conference, the Court will consider what further discovery, briefing, evidentiary hearings and/or trial is required to resolve the Motion [to Value] and Responses.   In the interim, all discovery among the parties regarding substantive matters raised by the Motion [to Value] is stayed.[3]

On May 12, 2014, Comerica filed an Agreed Motion [ECF 267] to continue the status

---

[3] This Court's standard practice is to stay discovery in contested matters and adversary proceedings pending mediation.

conference set for May 14, 2014; the Court granted that motion by Order [ECF 268], which continued the status conference to June 12, 2014. That Order was silent as to whether a discovery ban remained in place.

Following mediation conducted on May 13, 2014, by retired Miami-Dade Circuit Judge Herbert Stettin[4] [ECF 266, 269, 270], the Trustee and Comerica reached agreement to settle the amount of distribution to be made to Comerica on account of its secured claim, and Frank and his counsel knew on that same day that the Trustee and Comerica had settled. Frank, El Mar, and Oceanside reached impasse with Comerica and, thus, entered a Report of Mediation Impasse [ECF 270]. Following her settlement with Comerica, the Trustee filed her Motion (the "Comerica Settlement Motion") [ECF 273] on May 20, 2014, seeking the Court's approval of her compromise with the Bank. The Court scheduled an evidentiary hearing on the Comerica Settlement Motion for June 12, 2014 [ECF 275, 279].

Frank has never asserted that he, El Mar, or Oceanside held any direct or independent claims against Comerica. Rather, his Cross-Motion [ECF 244] objecting to Comerica's Motion to Value [ECF 228] sought to minimize the allowed amount of Comerica's secured claim so as to enhance the funds available to satisfy other claims (including, *a fortiori*, his own, El Mar's, and Oceanside's). At no time has Frank, El Mar, nor Oceanside asserted any claim against the estate other than a general unsecured claim, which is entitled to *pari passu* distribution from the estate along with other general unsecured creditors and which is subordinate to those claims entitled to priority payment under the Bankruptcy Code distribution scheme.

As a matter of law, the Comerica Settlement Motion [ECF 273] created a Contested Matter

---

[4] Former Judge Stettin is an extraordinarily skilled and universally respected mediator in complex commercial disputes.

within the meaning of Bankruptcy Rule 9014, thereby automatically triggering the discovery provisions of Bankruptcy Rules 7026 and 7028-7037 (essentially the same discovery rules as those provided in the Federal Rules of Civil Procedure).

The record reflects that Frank, El Mar, and Oceanside filed no objection to the Comerica Settlement Motion (although their Cross-Motion [ECF 244] to the Motion to Value remained pending and was also scheduled for hearing on June 12, 2014). Frank, El Mar, and Oceanside conducted no discovery in connection with the Comerica Settlement Motion.

At the hearing on June 12, 2014,[5] to consider the Comerica Settlement Motion and about nine-other related motions, responses, and replies, then-counsel for Frank, El Mar, and Oceanside, Kevin C. Gleason, asserted that the status conference Orders [ECF 256, 268] had the effect of prohibiting his clients from conducting any discovery on the Comerica Settlement Motion.   The status conference Orders could arguably be interpreted that way, although a fairer reading is that the stay on discovery only applied to the Motion to Value. Regardless, Frank, his entities, and Mr. Gleason knew on May 13, 2014, that a settlement had been reached between Trustee Yip and Comerica and received a copy of the settlement agreement and the Comerica Settlement Motion on May 20, 2014.   As the Court stated on the record at the June 12 hearing, "Anybody unhappy with the settlement [between Trustee Yip and Comerica] would have come screaming in here and asked for discovery. And that didn't happen." Mr. Dillworth represented at the June 12, 2014 hearing that neither Mr. Gleason nor anyone else had issued or asked for discovery on the Comerica Settlement Motion and that he and Trustee Yip would have immediately consented to

---

[5] There is no transcript of the June 12, 2014, hearing on the docket.   However, the Court has listened to the entire audio recording of that hearing in connection with preparing this Order. Any party in interest may, of course, order the transcription of the audio recording from the court reporter.

such discovery had anybody asked. Counsel for Comerica Bank represented that his office had three banker's boxes of loan and related documents that had first been gathered in connection with the Comerica foreclosure action that preceded the Debtor's bankruptcy filing, but that no party in interest had ever asked to look at them—and that Comerica and its counsel would have agreed to such review had it been sought. Had any party in interest asked, the Court would have immediately opened discovery on the Comerica Settlement Motion and shortened the time for responses on an *ex parte* basis as contemplated by Local Rule 9013-1(C)(7). Nobody asked.

The Court therefore concludes that Frank's contention that he was prohibited from conducting discovery on the Comerica Settlement Motion is a red herring and unworthy of serious consideration.

Following the evidentiary hearing conducted June 12, 2014, the Court approved the settlement by Order [ECF 286] entered June 13, 2014.

Up to this point, the actions of Frank, El Mar, and Oceanside, largely taken through counsel, were within the range of reasonable actions taken by creditors in a bankruptcy case—not necessarily well considered or well executed, but not unreasonable and certainly not sanctionable. That soon changed.

### The Botched Appeal

Despite having filed no objection to the Comerica Settlement Motion, on July 2, 2014, Frank filed a Notice of Appeal [ECF 292] for himself, *pro se*, and purportedly on behalf of El Mar and Oceanside,[6] together with a letter [ECF 291] that the Court treated as a motion to extend time to file a notice of appeal.   The Trustee [ECF 308] and Comerica [ECF 309] responded to Frank's

---

[6] See footnote 2 above.

Motion to Extend Time [ECF 291], correctly pointing out that Bankruptcy Rule 8002 required any notice of appeal to have been filed within 14 days of the entry of the Order [ECF 286] on June 13, 2014, i.e., by Friday, June 27, 2014. In addition, the Trustee pointed out in her Response [ECF 308] that Frank, El Mar, and Oceanside had failed to file any designation of the items to be included in the record on appeal and the issues on appeal, all of which are required by Bankruptcy Rule 8006 and all of which were due within 14 days of the filing of the (fatally late) Notice of Appeal on July 2, 2014, i.e., by July 16, 2014.

### Frank Escalates Accusations

In the 28-page Response [ECF 310] filed July 28, 2014, by Frank *pro se* and purportedly on behalf of El Mar and Oceanside,[7] Frank broadly expanded the questions first raised by his counsel on March 28, 2014 [ECF 244] to allege, for the first time, that Comerica had committed "a possible *fraud* upon the debtor, creditor [Frank *et al.*] and this Court." (Emphasis in original.) Frank alleged [ECF 310, p. 10-11] the following:

a. That Comerica Bank had a One Million Dollar Certificate of Deposit posted by the Debtor which the secured creditor retained and never credited the account of the Debtor by reducing the amount of principal of the loan or otherwise;

b. That Comerica Bank received an estimated payment of approximately One Million Dollars under a "swap agreement" connected with its loan to the Debtor. It appears the account of the Debtor was never credited for these payments;

c. That public records reveal that the secured creditor had cross-collateralized other property in connection with the loan to the Debtor. Comerica Bank failed to give the Debtor a credit upon the sale of the collateral, and

d. among other errors and omissions.

Comerica Bank may have been overly enriched by millions of dollars.  ALL of which funds could have enured to the benefit of the estate and its creditors. The

---

[7] See footnote 2 above.

Trustee failed in her fiduciary duty to the creditors in using poor business judgment in ignoring these factors. Likewise, the Court abused its discretion in approving the compromise under these circumstances.

Further, the Court denied the Creditors the opportunity of discovery[8] before reaching its determination. Had the creditors been permitted discovery, it could have received an accounting and other evidence from the secured creditor which very possibly would have led to denial of the secured creditors remaining claim and direct financial benefit to the estate and its creditors.

Additionally, in approving the compromise, the secured creditor was allowed to forego the payment of any of the additional 1.5 Million Dollars in administrative expenses associated with the Chapter 11 case administration. The Debtors estate was forced to pay all the administrative expenses and the secured creditor in essence "rode the bus for free."

Lastly, under [Bankruptcy] Rule 9019, a compromise of such significance required that it be handled through a plan and voted upon by the creditors to be approved.

The Court conducted a hearing on Frank's Motion to Extend Time for Appeal on July 29, 2014 [ECF 291].[9] At the hearing, El Mar and Oceanside, through counsel, withdrew the Motion as to them, and the hearing proceeded solely on Frank's Motion, with Frank arguing *pro se*. The Court denied the Motion to Extend Time to Appeal [ECF 291] and struck the Notice of Appeal [ECF 292] because, pursuant to the provisions of Local Rule 87.4 of the District Court, the bankruptcy court is "authorized and directed" to dismiss an appeal if it is not timely filed under Bankruptcy Rule 8002 or if a designation of the record or the statement of the issues on appeal is not timely filed under Bankruptcy Rule 8006 and Bankruptcy Local Rule 8006-1. The Court accordingly did not reach the novel and elaborate allegations of fraud made by Frank in the Response [ECF 310].

Frank timely filed a Notice of Appeal [ECF 316] from the Order Denying Motion to Extend Time to Appeal and Striking Notice of Appeal as Untimely [ECF 311]. The appeal was

---

[8] Discussed above at pp. 9-10.

[9] A transcript of that hearing is docketed at ECF 314.

docketed in the District Court on September 26, 2014, as Case No. 14-cv-62223-WJZ.   By Order [ECF 10] entered August 28, 2015, Judge Zloch determined that this Court had not abused its discretion in denying the Motion [ECF 291] and dismissed the appeal.   No appeal was taken from Judge Zloch's Order, which is now final.

### Trustee Yip's Objections to Claims of El Mar, Oceanside, and Frank

### 1.  El Mar's Claim

The Debtor filed its initial Schedules and Statement of Financial Affairs ("SOFA") [ECF 36] on June 20, 2013. El Mar was not listed on Schedule F as a creditor, but was listed on Schedule G as being party to a "Five (5) year Lease Agreement between the Debtor and El Mar Associates, Inc. for the Tiki Bar located on the Property." [ECF 36, p. 25 of 36.]   El Mar was not identified by the Debtor in SOFA Question 4 [ECF 36, p. 29 of 36] as a party to any litigation with the Debtor.

El Mar filed Claim 17-1 in the amount of $3,350,000 on September 30, 2013.   On its face, Claim 17-1 is a "[c]ontingent claim for rejection of lease, breach of contract."   Claim 17-1 was executed by Frank as Director of El Mar.   Attached to Claim 17-1 is the first page of a Second Amended Complaint in an action in the Circuit Court for Broward County, Florida, Case No. CACE 10-22268.   According to the Second Amended Complaint, the Plaintiffs are Oceanside, Frank, and Angela DiPilato; El Mar is not a Plaintiff.   The Defendants include the Debtor, its principals, and related entities.   Also attached to Claim 17-1 is a single-page Calculation of Damages, which recites, in its entirety, the following:

The damages for beach [sic] of contract are calculated as follows:

Using an 8.5% discount rate, based on 10-year operating projections, conservatively $3,000,000 for future lost profits, not including any portion of 2013, plus the initial investment of approximately $350,000.

12

On May 20, 2014, El Mar filed Amended Claim 17-2 in the amount of $3,550,000, based upon "[l]ost profits, conversion of personal property, breach/rejection damages." Claim 17-2 was also signed by Frank as Director of El Mar and had attached the same first page of the Second Amended Complaint in the above state court action (to which El Mar is not a party). Claim 17-2 also had attached the first page of a Commercial Lease purportedly between the Debtor and El Mar, and added to the Calculation of Damages contained in Claim 17-1 a single line which states, "The damages for sale of Creditors property is $200,000."

### 2. Oceanside's Claim

As noted above, the Debtor filed its initial Schedules and Statement of Financial Affairs [ECF 36] on June 20, 2013. Oceanside was listed on Schedule F as a creditor holding a contingent, unliquidated, and disputed claim in an unknown amount. [ECF 36, p. 22 of 36]. Oceanside was also identified as a party to litigation with the Debtor in SOFA Question 4 [ECF 36, p. 29, 30 of 36] in three cases pending in the Circuit Court for Broward County, Florida: Case Nos. CACE-10022268 (identified by the Debtor as a dispute involving "Contract and Indebtedness"), CACE-11022851 (identified by the Debtor as involving "Real Property"), and CACE-11022878 (identified by the Debtor as involving "Real Property").

Oceanside filed Claim 18-1 in the amount of $4,392,000 on September 30, 2013. On its face, Claim 18-1 is for "Assault and Battery." Claim 18-1 was executed by Frank as President of Oceanside. Attached to Claim 18-1 is the first page of a Second Amended Complaint in an action in the Circuit Court for Broward County, Florida, Case No. CACE 10-22268. According to the Second Amended Complaint, the Plaintiffs are Oceanside, Frank, and Angela DiPilato. The Defendants include the Debtor, its principals, and related entities. Also attached to Claim 18-1 is

13

a single-page Calculation of Damages, which recites, in its entirety, the following:

The damages for breach of contract are calculated as follows:

Anticipated profits of $183,000 for 24 years = $4,392,000.
Initial investment was approximately $600,000.

On May 19, 2014, Oceanside filed Amended Claim 18-2 in the amount of $4,392,000 based upon "contract, property, fraud, etc., (see attached)."   Claim 18-2 was also signed by Frank as President of Oceanside, attached the same first page of the Second Amended Complaint in the above state court action, and attached a single-page Calculation of Damages, which recites, in its entirety, the following:

The damages for breach of contract are calculated as follows:

Anticipated profits of $183,000.00 for 24 years = $4,392.00 [sic]

1.   Initial Investment was approximately $600,000.00;

2.   The damages for Sale of Creditors property is $500,000.00;

3.   The damages for Fraud are Anticipated profits of $183,000.00 for 24 years = $4,392,000.00;

4.   The damages for Fraud In the Inducement are Anticipated profits of $183,000.00 for 24 years = $4,392,000.00;

5.   The damages for Fraudulent Misrepresentation are Anticipated profits of $183,000.00 for 24 years = $4,392,000.00;

6.   The damages for Negligent Misrepresentation are Anticipated profits of $183,000.00 for 24 years = $4,392,000.00;

7.   The damages for Wrongful Eviction are Anticipated profits of $183,000.00 for 24 years = $4,392,000.00;

8.   The damages for Constructive Eviction are Anticipated profits of $183,000.00 for 24 years = $4,392,000.00;

9.   The damages for Forcible Entry and Unlawful Detainer are Anticipated profits

14

of $183,000.00 for 24 years = $4,392,000.00;

10.   The damages for Unjust Enrichment are $600,000.00;

11.   The damages for Equitable Estoppel are $4,392,000.00;

12.   The damages for Promissory Estoppel are $4,392,000.00;

13.   The damages for Tortious Interference with Business are Anticipated profits of $183,000.00 for 24 years = $4,392,000.00;

14.   The damages for Conversion are $600,000.00.

Exactly how these damages are calculated is not specified in Claim 18-2, nor is how they aggregate to $4,392,000.00, as set forth on the face of Claim 18-2.   From any objective standpoint, Oceanside Claim 18-2 is nonsense.

### 3.   Frank's Claim

As noted above, the Debtor filed its initial Schedules and Statement of Financial Affairs [ECF 36] on June 20, 2013.   Frank was listed on Schedule F as a creditor holding a contingent, unliquidated, and disputed claim in an unknown amount. [ECF 36, p. 21 of 36].   Frank was also identified as a party to litigation with the Debtor in SOFA Question 4 [ECF 36, p. 29 of 36] in one case pending in the Circuit Court for Broward County, Florida: Case No. CACE-11020171 (identified by the Debtor as a dispute involving "Real Property Commercial Foreclosure").

Frank filed Claim 19-1 in an unliquidated amount on September 30, 2013.   On its face, Claim 19-1 is for "Assault and Battery."   Claim 19-1 was executed by Frank *pro se.*   Attached to Claim 19-1 is the first page of a Second Amended Complaint in an action in the Circuit Court for Broward County, Florida, Case No. CACE 10-22268.   According to the Second Amended Complaint, the Plaintiffs are Oceanside, Frank, and Angela DiPilato.   The Defendants include the Debtor, its principals, and related entities.   Also attached to Claim 19-1 is a single-page

Calculation of Damages, which recites, in its entirety, the following:

> The damages for assault and battery are unliquidated and will have to be determined by a court or jury.

### Trustee Yip's Objection to Claims of El Mar, Oceanside, and Frank

On November 12, 2014, the Trustee filed her Second Omnibus Objection [ECF 351] to the Claims filed by El Mar (Claim 17), Oceanside (Claim 18), and Frank individually (Claim 19). Trustee Yip's Objection to El Mar's Claim 17 was that, because the Claim was for lost profits, conversion, and breach/rejection damages in connection with the Tiki Bar lease, the Court's previous determination that the Tiki Bar lease was invalid and unenforceable in Adversary Proceeding 13-1641 meant that there was no allowable claim and that there are accordingly no actual damages associated with Claim 17.

Trustee Yip's Objection to Oceanside's Claim 18 was based in part upon the same logic relating to the Tiki Bar lease invalidation. In addition, Trustee Yip's Objection was based upon Oceanside's failure to file a copy of any restaurant lease, prosecute the relevant state court complaint, and establish any liability of the estate for the claims asserted in the state court litigation and because any damages are "remote, speculative and unsupported by record evidence."

Trustee Yip's Objection to Frank's Claim 19 was substantially identical to her Objection to Oceanside's Claim 18.[10]

---

[10] It is important to note here that, pursuant to 11 U.S.C. § 502(a), a claim filed in a bankruptcy case is "deemed allowed" unless a party in interest (such as the trustee in this case) objects. Bankruptcy Rule 3001(f) further clarifies that a proof of claim executed and filed "shall constitute prima facie evidence of the validity and amount of the claim."

A trustee in a chapter 7 case has the duty, "if a purpose would be served, [to] examine proofs of claim and object to the allowance of any claim that is improper," pursuant to 11 U.S.C. § 704(a)(5). A chapter 11 trustee has the same duty pursuant to 11 U.S.C. § 1106(a)(1).

16

Frank filed his 120-page Response [ECF 360] on December 9, 2014.   In it, Frank again alleged that the Trustee had exhibited poor business judgment in connection with the Comerica Bank settlement and in settling "improper tax claims." He accused the Trustee of having "managed the estate to her benefit, the benefit of her Attorney and professionals, and one select creditor. ALL to the detriment of the unsecured creditors."   Further, Frank alleged that her objection to Claim 19 "was brought about solely to advance Trustee Yip's own interests, is a nullity, is insufficient, is improper, *frivolous* and without merit."   Frank further alleged that "Interim Trustee Yip would have known this if she did any research before filing her 'bad faith' and meritless objections."

Frank asserted in his Response that the basis of his Claim 19 was as follows:

14. On June 02, 2013, the Debtor was liable to KENNETH FRANK for tortious acts, etc. Pending was Frank's lawsuit against the Debtor and Debtors' principals in State Court. * See, *Oceanside Lauderdale, Inc and Kenneth Frank, et. al. v. Ocean 4660, LLC, et.al,* (Case No.: CACE 10-22268(13), Circuit Court, Broward County).  The 17 Count Complaint seeks damages against the Debtor for *fraud, fraud in the inducement, fraudulent misrepresentation, negligent misrepresentations, unjust enrichment, equitable estoppel, promissory estoppel, tortious interference with business, conversion, conspiracy to commit assault*, and *conspiracy to commit battery*, among other things.

Through Mr. Gleason, once again appearing in the case as their counsel,[11] El Mar and

---

When a claim objection is filed, the objecting party has the burden of going forward with evidence that the claim is invalid; at that point, the burden shifts to the claimant to establish the validity of the claim.  Claims 17, 18 and 19 here were ultimately tried by this Court on December 15, 2016, and disallowed following trial by Order [ECF 527] entered December 19, 2016.

[11] Mr. Gleason appeared in the main bankruptcy case on an in-and-out basis occasionally on behalf of Frank and somewhat more frequently on behalf of El Mar and Oceanside.  It seems that his appearances and withdrawals were related to whether or not he was currently being paid. Because a bankruptcy case includes an evolving series of contested matters (within the meaning of Bankruptcy Rule 9014), rather than a singular adversary proceeding of a conventional *A v. B* litigation, the occasional appearance and disappearance of counsel is less bizarre than it might appear to an Article III court. Having said that, this Court is unlikely to allow such intermittent representation in any future case.

17

Oceanside also filed a Response [ECF 362] to the Trustee's Objection [ECF 351]. One of three pages recited, in two sentences, the nature of their claims:

1.  Creditors' claims are based upon calculations of lost profits and/or actual funds expended in the improvement and/or operations of businesses.

2.  Creditors have documentation supporting their claims.

This anodyne response starkly contrasts with the inflammatory nature of Frank's *pro se* Response [ECF 360]. In the ultimate event, no documentation or other evidence was ever introduced providing any support for the Frank, El Mar, or Oceanside claims, let alone "calculations of lost profits and/or actual funds expended" or "documentation supporting their claims." [ECF 362].

### The Contested Trustee Election

Following conversion of the case to one under Chapter 7 [ECF 340] on October 3, 2014, the United States Trustee appointed [ECF 344] Maria Yip, who had served as Chapter 11 Trustee, as the interim Chapter 7 Trustee. At the Chapter 7 meeting of creditors, held pursuant to 11 U.S.C. § 341 on November 12, 2014, El Mar and Oceanside sought an election of a Chapter 7 Trustee and sought to elect as Trustee William A. Brandt, Jr.,[12] in place of Maria Yip. Pursuant to the requirements of 28 U.S.C. § 586(a)(3), 11 U.S.C. § 702, and Bankruptcy Rule 2003(d), the United States Trustee reported [ECF 358] the disputed election to the Court. In his 50-page response (accompanied by 46 pages of exhibits) [ECF 361] filed December 9, 2014, Frank reiterated in somewhat modified form his allegations of fraud by Comerica Bank and asserted "poor business judgment" by Trustee Yip. For the first time, Frank alleged that Trustee Yip had *breached her*

---

[12] Mr. Brandt is a nationally well-known and highly respected reorganization professional who has served as trustee in a large number of significant cases.

18

*fiduciary duties* to the estate.[13]

The Court *sua sponte* directed then-Interim Trustee Yip to respond to Frank's allegations by Order [ECF 363] entered December 16, 2014, and authorized Frank to reply.   Interim Trustee Yip Responded [ECF 364] on January 5, 2015, and Frank Replied [ECF 365] on January 20, 2015.

Pursuant to 11 U.S.C. § 702(a),

A creditor may vote for a candidate for trustee only if such creditor . . . (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under [Chapter 7].

A review of El Mar's, Oceanside's, and Frank's claims, and Trustee Yip's Objections to them, makes clear that those claims are ineligible to vote under § 702(a). On its face, El Mar's Claim 17-1 is a "[c]ontingent claim for rejection of lease, breach of contract," and its amount was facially calculated "based on 10-year operating projections, conservatively $3,000,000 for future lost profits." Amended Claim 17-2 was facially based upon "[l]ost profits, conversion of personal property, breach/rejection damages" and was based in part on claims pursuant to state court litigation to which El Mar was not even a party.

Oceanside's Claim 18-1 is facially for "Assault and Battery" in the amount of $4,392,000, and in part based upon state court litigation.   But the damage calculation attached to Claim 18-1 asserts damages for lost profits over a projected 24-year period.   Claim 18-2 states that it is based upon "contract, property, fraud, etc." Its damage calculation asserts a laundry list of 14 separate elements of damages, each of which asserts individual categorical damages in amounts ranging

---

[13] Many of the issues relating to the disputed election deal with objections Trustee Yip filed to the claims of El Mar and Oceanside.   Those objections were filed shortly before the Chapter 7 meeting of creditors under § 341.   Trustee Yip's claim objections were made in good faith and ultimately were determined to preclude El Mar and Oceanside from being eligible to call for an election or to vote in the contested trustee election.

from $4,392 to $4,392,000 (including one of $4,392, one of $500,000, three of $600,000 each, and ten of $4,392,000)—all of which somehow add to $4,392,000.

Frank's Claim 19-1 is for "Assault and Battery" and is, on its face, "unliquidated and will have to be determined by a court or jury."

Even if then-Interim Trustee Yip had not objected to Claims 17, 18, and 19, it is clear on the face of each of them that none of them is "an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under [chapter 7]" and to vote for a trustee pursuant to § 702(a).

Following a hearing conducted March 18, 2015, the Court determined by Order [ECF 389] (the "Election Order") entered March 23, 2015, that neither El Mar nor Oceanside was eligible to request an election of a Chapter 7 trustee on November 12, 2014. Accordingly, the Court determined that no valid election occurred and that Interim Trustee Yip was the Chapter 7 Trustee in the case.[14]

On April 6, 2015, Frank,[15] Oceanside, and El Mar, through counsel, filed a Notice of Appeal [ECF 397] from the Election Order. The District Court, by Order [ECF 17] entered March 30, 2016, in Case No. 15-cv-60732-WJZ, affirmed the Election Order. Judge Zloch found:

> The real essence of Appellants' position is that Trustee Yip's objections were made for some nefarious purpose, and therefore were groundless. A review of the record below, however, refutes any such contention. Indeed, Trustee Yip had rational and legitimate bases to object to Appellants' claims.

In a footnote, Judge Zloch expanded on his determination:

---

[14] Pursuant to 11 U.S.C. § 702(d), "if a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case."

[15] Frank had not sought to participate in the trustee election but has nonetheless appealed.

20

Appellants' contention that Trustee Yip levied her objections for the purpose of enriching herself in the case to continue earning fees strikes the Court as frivolous. The case was converted to Chapter 7 upon Trustee Yip's Motion, which she filed to protect the interest of the creditors by preventing her own fees and expenses from eating up the remaining estate property.  As the Trustee put it: "Based on the continuous opposition from Frank, El Mar and Oceanside on virtually every matter in this case, it appears that proceeding with a confirmation process [in Chapter 11] would only serve to increase the administrative costs of this estate and thereby, decrease, if not eliminate, distributions to creditors."   Case No. 13-23165-BKC-JKO (DE 331, Sept. 22, 2014).

On further appeal to the Eleventh Circuit Court of Appeals, the Court affirmed the District Court's judgment "based on its well-reasoned order."   *Frank v. Yip*, No. 16-12056 (11th Cir. Dec. 20, 2016).   The Court of Appeals' mandate issued February 13, 2017.

Simply stated, Frank's challenge to the Election Order was frivolous; it depleted the estate's assets by forcing Trustee Yip to incur unnecessary litigation expenses, and three levels of the federal judiciary were forced to address idiotic claims.

## Motion to Disqualify

Within a week of the entry of the Election Order, in a 36-page Motion [ECF 394] supported by a 35-page Affidavit [ECF 395] (both filed March 30, 2015), Frank moved to disqualify the Court "pursuant to 28 U.S.C. section(s) 144[16] and 455, and the Due Process Clauses of the United States Constitution, Amendments V and IX." Frank alleged that disqualification is required because (1) the Court's "impartiality might be reasonably questioned"; (2) the Court "has a personal bias and prejudice concerning a party and/or counsel for the party"; (3) the Court "has a substantial association with the law firm representing the Chapter 7 Trustee, Maria Yip"; and (4) "the Court's action from the inception display a deep-seated favoritism and antagonism that make fair judgment impossible." The Court denied the disqualification Motion by Order [ECF 438]

---

[16] By its terms, § 144 is applicable only to the disqualification of district judges.

entered July 21, 2015, finding each of the asserted bases for disqualification frivolous or legally inadequate.

Frank promptly moved for reconsideration of the Order Denying Motion for Disqualification [ECF 438] in a 61-page Motion [ECF 445] filed July 31, 2015.   The reconsideration Motion was denied by Order [ECF 449] entered August 13, 2015.   Frank filed a notice of appeal [ECF 455] addressed to the Order Denying Disqualification and Order Denying Reconsideration [ECF 438, 449].

On appeal, in Case No. 15-cv-61786-KMW, Judge Williams held, citing the standards in *U.S. v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986), that "a judge's impartiality must *reasonably* be questioned in order for the judge to recuse, because there is the need to prevent parties from manipulating the system for strategic reasons, perhaps to obtain a judge more to there [sic] liking," and that, as such, "a charge of partiality must be supported by facts." Judge Williams held that Frank's complaints about this Court's decision not to recuse "fall squarely in the . . . category of 'unsupported, irrational, or highly tenuous speculation.'" Accordingly, the District Court found that "there was no abuse of discretion in the Bankruptcy Court's orders denying [Frank's] motion to recuse and motion to reconsider the order denying [Frank's] motion to recuse," and thus affirmed.   The Order on Appeal [ECF 18] was entered September 6, 2016.   No appeal was taken to the Court of Appeals and Judge Williams' Order on Appeal is now final.

It is notable in connection with the recusal motion that, although Frank made significant accusations, none of them were supported by a shred of evidence.   They were, as Judge Williams found, "unsupported, irrational, or highly tenuous speculation."   This has been the hallmark of Frank's accusations throughout this case: there has been no evidence whatsoever to support any of

22

them.

### Frank's Complaint to the United States Trustee

United States Trustees are appointed by the Attorney General pursuant to 28 U.S.C. § 581 to serve in 21 regions in the United States.   These regions cross state lines, judicial districts, and the jurisdictional boundaries of the Courts of Appeals.[17]  The system was created as part of the enactment of the Bankruptcy Code in 1978. The duties of each United States Trustee are set forth in 28 U.S.C. § 586, and include (among many pages of other listed duties) establishing, maintaining, and supervising a panel of private trustees who are eligible and available to serve as trustees in cases under Chapter 7 or Chapter 11, as well as supervising the administration of cases and trustees in cases under Chapters 7, 11, 12, 13, and 15.

Thus, if a party in interest has a complaint about the handling or administration of a case by a panel trustee in a Chapter 7 or Chapter 11 case (as distinct from a legal issue, which should be brought before the court) the proper place to take that complaint is to the Office of the United States Trustee.

By 32-page Notice of Similar or Related Actions [ECF 471], filed March 8, 2016, Frank gave notice in the Debtor's case that he had made a formal complaint (the "Complaint to the UST") against Trustee Yip to the Office of the United States Trustee.[18]   The Complaint to the UST accused Trustee Yip of malfeasance regarding her administration of the Debtor's estate and

---

[17] Region 21 encompasses "[t]he judicial districts established for the States of Alabama, Florida, and Georgia and for the Commonwealth of Puerto Rico and the Virgin Islands of the United States," thus encompassing the entire Eleventh Circuit and fragments of the First and Third Circuits.

[18] It was clearly inappropriate for Frank to file this Notice with the Court, since the Court has no direct administrative or supervisory role over a bankruptcy trustee.   Nonetheless, the filing of the Notice of Similar or Related Actions had to be dealt with by the Court as a request for relief. The effect was to increase the expense and burden on the administration of the estate.

23

additionally accused her of having:

      a.  Looted the estate solely for the benefit of herself and the professionals she employed;

      b.  Charged excessive fees;

      c.  Misappropriated money from the estate;

      d.  Refused to be deposed by the unsecured creditors of the estate;

      e.  Inaccurate reporting;

      f.  Breached her fiduciary duty;

      g.  Filed illegal claims objections;

      h.  Improperly intefered [sic] with and obstructed a Trustee election;

      i.  Employed Attorneys' [sic] to do work she was entrusted to do;

      j.  Failure [sic] to object to hundreds of thousands of dollars in tax claims that did not belong to the debtor.  Despite, the unsecured creditors tendering evidence of this to Trustee Yip;

      k.  Repeated violations of the Bankruptcy Code;

      l.  Failure [sic] in the performance of her official duties;

      m.  [sic] Negligence and Gross Negligence, and

      n.  Otherwise negligently and willfully mis-administered the estate.

These allegations are both baseless and outrageous.

In response to this excoriating set of charges, Trustee Yip filed a Motion [ECF 474] seeking a hearing on Frank's Complaint to the UST.   Attached to the Motion was Trustee Yip's formal response to the U.S. Trustee.   The Court granted this Motion by Order [ECF 475], which set a hearing on Frank's Notice [ECF 471] for May 18, 2016, at 10:00 a.m. and directed Frank to "appear at the preliminary hearing fully prepared to set forth and describe all of the facts

supporting the allegations set forth in the Complaint [to the UST].  The Court will thereafter determine whether any further hearing on the Complaint is necessary or appropriate."

At the hearing conducted on May 18, 2016, Frank appeared, as did counsel for Trustee Yip. The Court found that the Complaint to the UST [ECF 471] was insufficient on its face to state a basis for relief and ruled that it would be stricken under Bankruptcy Rule 7012, applying Fed. R. Civ. P. 12(f). Later that same day, at 2:14 p.m. and 2:46 p.m., respectively, Frank filed a new Notice of Similar or Related Actions [ECF 478] and a Response to Scheduling Hearing [ECF 479]. These were documents of *258* and *280* pages, respectively.  Following the hearing of May 18, 2016, and the filing of ECF 478 and ECF 479, the Court entered its Order [ECF 481] on May 26, 2016, which formally struck ECF 471 pursuant to Rule 12(f) and, although neither had been set for hearing, *sua sponte* struck ECF 478 and 479 for the same reasons, all as authorized by Rule 12(f)(1).  The Court further ruled that "Frank may file a complaint pursuant to Federal Rule of Bankruptcy Procedure 7001, which satisfies Federal Rules of Bankruptcy Procedure 7008 and 7009 [which generally adopts Fed. R. Civ. P. 8 and adopts Fed. R. Civ. P. 9], relating to the matters set forth in ECF Nos. 471, 478, and 479 by no later than **June 3, 2016.**"

Frank duly filed "on behalf of the estate of Ocean 4660, LLC" his 304-page "Complaint [ECF 487] for Breach of Fiduciary Duty; Negligence; Gross Negligence; Breach of Duties; Breach of Duty of Loyalty and Care; Wilful and Deliberate Misconduct; and Recovery on Bond and 'Demand for Jury Trial'" on June 3, 2016. This Complaint initiated Adversary Proceeding 16-1248 (the "Frank Adversary"), discussed below.

### The § 1927 Order to Show Cause [ECF 482]

Prior to filing of the Frank Adversary, while matters were pending on Frank's Notice of

Similar or Related Actions [ECF 478] and Response to Scheduling Hearing [ECF 479], and as a result of Frank's repeated filings of pleadings containing extravagant and outrageous accusations of fraud and misconduct by the Trustee, the Court *sua sponte* entered its Order to Show Cause [ECF 482] on May 26, 2016, directing Frank to show cause under 28 U.S.C. § 1927 why he should not be sanctioned for "unreasonably and vexatiously" multiplying the proceedings in this case. This ultimately proved to be a vain attempt to rein in the litigation. Frank was authorized to file a response to the Order to Show Cause by June 16, 2016, any party in interest was authorized to reply by June 27, 2016, and Frank was ordered to appear on June 29, 2016.

Frank filed a Response [ECF 489] on June 13, 2016. In it, Frank acknowledged that case law in the Eleventh Circuit holds that a *pro se* litigant may be sanctioned pursuant to 28 U.S.C. § 1927 and asserted that the facts in *Smartt v. First Union National Bank*, 245 F. Supp. 2d 1229 (M.D. Fla. 2003), "are glaringly distinguishable from the facts in this case."   Specifically, Frank asserted:

> Section 1927 requires a touchstone of bad faith, which is more than mere negligence or lack of merit. The 11th Circuit has held that an attorney who 'knowingly or recklessly pursues a frivolous claim' acts in bad faith. *Id.* [19] *Schwartz*[20] at 1225-1226.   It has not been determined that Frank's claims against Trustee Yip are frivolous.   In fact, the opposite is true.   This Court granted Frank permission to bring an Adversary Proceeding against Trustee Yip on these claims [ECF No. 481].

In her Reply [ECF 490] filed June 27, 2016, Trustee Yip asserted that the Court's Order to Show Cause [ECF 482] "was appropriately based upon Mr. Frank's three-year record of frivolous and vexatious conduct in this case.   While Mr. Frank's antics have generated nothing for himself, the estate and its legitimate creditors have suffered the consequences of unnecessary delay and

---

[19] Citing to *Smartt*.
[20] *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2013).

26

increased administrative costs." [Footnote omitted.]   Trustee Yip noted that "[r]ather than accepting the OSC [Order to Show Cause] as an opportunity to step back and re-evaluate his conduct during the entire pendency of this bankruptcy case, Mr. Frank instead decided to double down on his failed litigation strategy."

At the first hearing on the Order to Show Cause, held June 29, 2016, Frank asserted that he had acted in good faith throughout the main bankruptcy case and in the filing of Adversary Proceeding 16-1248.   *See* Transcript at ECF 494.   By contrast, Drew Dillworth, Trustee Yip's counsel, made clear that Frank's actions were enormously increasing the administrative costs of the estate and were ultimately pointless:

> Nearly everything in [these] cases, since the final approval of the settlement with Comerica Bank, nearly every pleading filed by Mr. Frank has been an effort to just delay the inevitable distribution of these funds to the priority scheme in Section 726 of the Code.
>
> At the time we reached that settlement, we had a very sizeable pile of money available to the estate, and its most [senior] creditor class, which is the priority class of unsecured claims, which exceed $2 million, and the goal which we expressed to the parties and the Court at the time was to engage in the same type of mediation process with the priority creditors as we engaged in with the secured and administrative claims, the non-professional administrative claims, with the goal ultimately of having some funds spilled down to unsecured claims, at which point in time we would reconcile those claims.
>
> That entire process has been frustrated by Mr. Frank, and none of the pleadings that he's filed really will do anything to put money in his pocket or in the pocket of unsecured creditors, because of the finality of everything that occurred prior to the conversion of this case, and in that I mean the sale of the property, which Mr. Frank still criticizes, and the settlement with the primary creditor in this case, Comerica Bank.
>
> All of those proceedings that left the pot of money are final proceedings, are final orders of this Court, not subject to collateral attack.   All we've heard today on the response Mr. Frank filed to the order to show cause, are his subjective beliefs.   I heard the word "believe" counted seven times, eight times, but in every context in which he made an assertion, whether it be in the context of Trustee Yip's behavior

27

in presenting, for example, the Comerica settlement to this Court, he believes that there were misrepresentations made.

Well, you know, I believe a lot of things, but I didn't act on those beliefs in a court of law without having some evidence to support them....

ECF 494, p. 9, l.10 – p. 10, l.24.

There was, however, ... some objection raised in connection with ultimately settling the Comerica Bank claim, that there was other collateral, or that Comerica Bank failed to give a credit, but there was no evidence presented. There has never been any evidence presented and, in fact, your Honor may recall the bank officer standing before the Court telling your Honor that there was no other collateral supporting the debt here, and the assets, that the sale proceeds, was the last remaining bucket of collateral Comerica had to satisfy its claim.

Those representations were made. They were unchallenged other than, again, subjective beliefs presented to the Court. So all those issues were raised, framed by Mr. Frank in connection with the settlement of Comerica Bank's claim. That order is final. Raising them again in an indirect way, by saying, well, Trustee Yip didn't investigate the claim, that's not appropriate, and frankly, Trustee Yip did investigate the claim.

ECF 494, p. 11, l.12 – p. 12, l.5.

So while Mr. Frank may be correct, that if there were evidence under a Rule 60 standard, he could come back and challenge the final rulings of this Court, if there was evidence of fraud, if there was evidence of misrepresentation, then not only should the Court re-examine, but I would be encouraging that process as well, but the problem is, ... you see in the complaint he filed June 2nd, all you [have are] Mr. Frank's subjective feelings and beliefs, and that is not how we do things here.

ECF 494, p. 12, l.16–l.25.

In later colloquy between the Court and Frank regarding whether Comerica Bank had obtained other collateral for the Ocean 4660 loan, Frank noted that a document, the loan commitment from Comerica, which is in the record and attached as Exhibit D to the Complaint in Adversary Proceeding 16-1248, required that the Debtor post additional collateral for the loan:

MR. FRANK: And I believe that that's why we wanted discovery then. I believe I have enough proof here that it's not a wild allegation, your Honor, when

it's in the form of commitment letters, and the mortgage itself requires ... that.

THE COURT: And did the debtor post it?

MR. FRANK: I can't say for certain that the debtor posted it.

THE COURT: Okay.

MR. FRANK: But I can say this, I don't think Comerica – it's in their commitment letter.  Why would they give the loan if the debtor did not post it?  They would have never closed the loan, your Honor.

THE COURT: That's – that may be a leap too far, having closed a number of commercial transactions in which at closing some condition is waived.  I'll look at your Exhibit D, Mr. Frank, but here is the fundamental problem, the settlement with Comerica Bank has long since been final and not subject to review.

The only way it could be undone is with a motion to set aside something for fraud.  It would be under Rule 9024, applying Rule 60(b), and for relief under Rule 60(b)(3) for fraud, it has to be brought no more than a year after entry of judgment, or order, or the date of the proceeding.  The settlement with Comerica Bank became final in 2014, more than two years ago.  So I'm really struggling to figure out what kind of relief you could get.

MR. FRANK: Your Honor, if we're talking about ... the trustee election.   If the trustee election dispute, if the 11th Circuit did resolve it favorably, then that new trustee would have the power to look into these orders.

THE COURT:  But could not bring an action to undo the settlement with Comerica Bank on grounds of mistake, inadvertence, surprise or excusable neglect, or newly discovered evidence or fraud, because the transaction, the settlement was consummated more than two years ago.

So I don't care if you hired an avenging angel as trustee, or the U.S. Trustee appointed a new trustee who was the avenging angel, or you elected a trustee, "you" being the creditor body, there is nothing that a new trustee could do to set aside the settlement with Comerica Bank, even for fraud.

And so I'm frustrated because you make allegations that there was fraud on the Court, perhaps fraud on the trustee, certainly misrepresentations made, but you let so much time pass without bringing the particulars of the fraud to the Court's attention, that there is nothing that anybody could do about it, and it's at the point where if there is nothing that can be done about it, and your principal objection is the failure to hold out for a better deal or to litigate with Comerica Bank, the time to

do so that has long since past, and yet we're here revisiting a question on which no Court could grant relief.

So, that's what pro – that appears is what prompted me to enter the order to show cause, that you are literally beating a dead horse, and it's taken up a lot of my time, it's costing the estate a bloody fortune, because Mr. Dillworth is going to be paid for his work here, and I just have the overwhelming sense that the delays which have been occasioned by you and nobody else have cost hundreds of thousands of dollars, and may well result in absolutely no money going to the benefit of unsecured creditors in this case, even though that is not what should have happened after the very successful $17 million sale.

And, you know, there was a wonderful cartoon published for years called Pogo, about politically wise creatures who live in the Okefenokee Swamp, ... and Pogo had a very great line that we have met the enemy and he is us.

By continuing to bring up matters that are now concluded in a way that there is nothing that could be done about them.  You're causing the trustee to incur fees and you're wasting your time.

I would very much like it if you would reflect on that.

ECF 494, p. 22, l.22 – p. 26, l.5.

The record reflects that although Frank *had* previously objected to the Comerica secured claim, that objection did not raise any question of additional collateral in the form of a certificate of deposit.[21] And between the Comerica Settlement Motion filed at ECF 273 and its approval by Order filed at ECF 285, not a single pleading was filed by Frank. As noted above, Frank could have taken discovery in connection with the Comerica Settlement Motion but did not do so.

The Court made a clear and explicit warning to Frank:

Mr. Frank, I will look at Exhibit D to your complaint filed in the adversary proceeding, *Frank v. Yip*, ... and I will set a hearing on that motion to dismiss.

If I conclude that the motion to dismiss should be granted, and that there is no smoking gun in your complaint, I will award sanctions against you.  They may

---

[21] *See* Motion Cross-Motion to Determine Claim of Comerica, Motion Setting Property Value [ECF 244].

well be significant sanctions against you because on the face of it you have unreasonably and vexatiously multiplied the proceedings in this case.

I'm not going to make such a ruling today.   I will carry this over to a hearing on the motion to dismiss the adversary proceeding, 16-1248, ... and I will give you a shot to put on evidence and prove what you are alleging.

I plead with you to consider carefully whether you have enough to prove the allegations that you've been making, because if you don't I will conclude on the basis of this entire three-year history of this case that you have attempted to thwart every step along the way, asserted crazy positions, lost every step of the way, lost on appeal in respect of everything that's been finally decided on appeal, and I would not have entered the order to show cause lightly.   I've never entered such an order before, and I been on this job for almost ten and a half years.[22]

So before we have the hearing on the motion to dismiss and the continued order to show cause, I would ask you to dig deep and consider carefully whether you want to proceed in the way that you have been proceeding, because if you do proceed, and if you lose, you will be whacked with sanctions.

If the adversary proceeding were dismissed with prejudice, I presume that the trustee – and if you stop interfering with the administration of the case, I suspect that the trustee will not seek sanctions against you. I would encourage her not to seek sanctions against you.

If she nonetheless sought them, I might not grant them, but if you keep going down the path you're now going down, I do not foresee good things in your favor.

When I say "not interfere with the administration of the case," I do not mean that if there are pending claims of El Mar, or Oceanside, or yourself that come on for– some kind of a contested matter, I don't expect you to roll over and play dead.

What I mean is the broader engagement in this case in which you have tried, without notable success, to block every step on the cleanup of this case, which should have been closed a year and a half, maybe even two years ago, and instead Mr. Dillworth has spent a lot of time, his firm has spent a lot of time, the trustee, I suspect, has spent a lot of time and effort, and God knows I have, in trying to sort this stuff out.

So you have a big decision to make.   I will read your Exhibit D, and I will–before any further hearing, I will carefully reread your complaint and your ... preliminary

---

[22] As of the entry of this Order, the Court has been on the bench eleven and a half years. Frank's conduct remains nonpareil.

response to the order to show cause.

I'm not prejudging things, but I'm telling you how they appear to me sitting here today, and you have to decide not only whether you've got enough to prevail, but whether at the end of the day you're going to receive any monetary benefit from it, because if you have succeeded in causing the estate to incur such great amount of administrative expense that nothing will trickle down to the unsecured creditors, then you would have been far better off with a fishing pole on a bridge over the Intracoastal fishing for supper than you were in killing as many trees as you have in filing these lengthy pleadings.

I think you've been wasting your time.   I am pretty sure you've been wasting Mr. Dillworth's time, and I'm almost certain you've been wasting mine.

So, think it through carefully, Mr. Frank.   We'll have a hearing on the motion to dismiss and this continued order to show cause.

ECF 494, p. 30, l.6 – p. 33, l.7.

Following the hearing held June 29, 2016, on the Order to Show Cause, the Court entered its Order [ECF 491] which noted Frank's Response [ECF 489], Trustee Yip's Reply [ECF 490], the Complaint filed in Adversary Proceeding 16-1248, and Trustee Yip's Motion to Dismiss [ECF 6] in Adversary Proceeding 16-1248. The Court indicated its intent to have the Order to Show Cause and Adversary Proceeding 12-1248 move in tandem and continued the Order to Show Cause to September 15, 2016.

Regrettably, Frank did not reflect on the Court's detailed admonition to him set forth above.   Instead, he more than doubled down. The Order to Show Cause and the Trustee's Motion [ECF 6] to Dismiss Adversary Proceeding 16-1248 were set for evidentiary hearing on September 15, 2016. On August 19, 2016, in the main bankruptcy case, Frank filed a 204-page Motion for Relief from Order for Fraud on the Court [ECF 497], seeking relief under Fed. R. Civ. P.

60(b)(3)[23] for orders going back to the Order [ECF 178], which authorized the sale of the Hotel.

Frank also filed a 150-page Response and Opposition [ECF 10] to the Trustee's motion to dismiss

the Adversary Proceeding.   Frank's preliminary statement in the latter filing is remarkable:

> Since the inception of her tenure as Chapter 11 Trustee, Defendant Yip with the assistance of the professionals she employed has operated a scheme to defraud this court and the unsecured creditors of the estate.   This scheme is complex with many facets, some that still remain to be uncovered during discovery.   The scheme centralized around a conspiracy with the Secured Creditor Comerica Bank to allow their claim without opposition, investigation or examination while the Trustee was working as a liquidating-collection agent for the Secured Creditor Comerica Bank. The second phase of the scheme was to allow Trustee Yip and the Professionals she employed along with Comerica Bank to unjustly enrich themselves while the unsecured creditors of the estate were burdened with millions of dollars in administrative expenses. [Footnote omitted.] In order to effectuate the plan Trustee Yip realized from the inception of her tenure that she needed to eliminate the few unsecured creditors of the estate so no one would be looking over her shoulder. [Footnote omitted.] Trustee Yip is vigorously working to eliminate the unsecured creditors of this estate through improper, unlawful and unfounded claims objections she interposed to their claims.   While effectuating this scheme to defraud, Trustee Yip has perpetrated a **fraud on the court, a fraud on the unsecured creditors of the estate,**[24] breached her fiduciary duties, acted in reckless disregard for the truth, acted in reckless disregard for her duties, and was negligent, and fraudulently obtained Orders from this Court, inter alia.

> *** 

> This scheme to defraud the court has depleted this estate of in excess of $20 Million Dollars[25] [sic] and left the estate penniless.

---

[23] Rule 60(b)(3) authorizes parties to seek relief for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Rule 60 applies to proceedings in the bankruptcy court pursuant to Bankruptcy Rule 9024. A motion under Rule 60(b)(3) must be made within one year after entry of the order as to which complaint is made.

[24] Emphasis in original.

[25] This might be the single most ridiculous contention advanced by Frank: the sole asset of the estate, the Hotel and related properties, sold at auction for $17 million – an amount many millions more than any party expected those properties to bring.   For Frank's claim that Trustee Yip "depleted this estate" of more than $20 million would mean that the estate had value in excess of $37 million, which is arguably the silliest and most outrageous assertion this Court has ever had to entertain.

Not a scintilla of evidence was ever provided in support of these outrageous allegations, despite repeated opportunities to do so, and not a word of them is true.

Because the pleadings filed by Frank in August 2016 raised new issues not previously before the Court, the Trustee sought, and the Court granted, a continuance of the various disputed matters. The Motion to Dismiss [ECF 6] and related pleadings in the Adversary Proceeding; the Fraud on the Court Motion [ECF 497] in the main case; the Order to Show Cause [ECF 482] in the main case; and Trustee Yip's Objection [ECF 351] and Frank's Responses [ECF 360 and 362] to Frank's entities El Mar's and Oceanside's Claims 17 and 19, respectively, and Frank's Claim 18 were continued for evidentiary hearing on December 15, 2016.

Frank filed Adversary Proceeding 16-1248 on June 3, 2016; the Summons [ECF 2] fixed the pretrial conference for September 28, 2016. Also on June 3, 2016, the Court issued its standard Order [ECF 3] Setting Filing and Disclosure Requirements for Pretrial and Trial, which, among other things, required Frank to make and serve the disclosures required by Bankruptcy Rule 7026 (applying Fed. R. Civ. P. 26) at least 20 days before the pretrial conference; it further required Frank to file and serve witness and exhibit lists. Frank failed to make any of the required pretrial disclosures or perform any of the other pretrial requirements.  He also failed to appear at the pretrial conference. As a result, Adversary Proceeding 16-1248 was dismissed with prejudice by Order [ECF 17] entered November 17, 2016.   Frank's motion [ECF 23] for reconsideration of this Order was denied by Order [ECF 24] entered December 9, 2016. Thereafter, Frank timely appealed; the matter on appeal in the District Court was docketed as Case No. 16-62929-WPD. Frank's appeal was dismissed with prejudice by District Judge Dimitrouleas by Order [ECF 10] entered April 6, 2017.   No appeal from the Order of dismissal was taken, and the Order is now

final.

Following the dismissal of Adversary Proceeding 16-1248, Frank sought to continue the

evidentiary hearing in the main bankruptcy case set for December 15, 2016, by Motion [ECF 503]

filed November 22, 2016. His grounds were that he had been unable to take Trustee Yip's

deposition in October because:

> [He] began experiencing severe bouts of panic and anxiety disorder from which
> [he] has suffered on and off for years.  Said attacks curtailed Frank's ability to
> function for the past several months, let alone take Trustee Yip's deposition.   As a
> result of the panic and anxiety attacks Creditor Frank was dis-functional and is
> unable to meet the procedural deadlines for discovery set by this Honorable Court.
> [ECF 503].

In addition, Frank asserted in his Motion to Continue Hearing [ECF 503] that a ruling by Judge A.

Jay Cristol in an unrelated adversary proceeding pending before him, Adversary Proceeding No.

14-1574, had criticized[26] (at ECF 92) Trustee Yip's conduct of that case:

> Creditor Frank needs to make an extensive inquiry into this matter, including but
> not limited to, examining the entire file in the aforementioned case; ordering and
> examining deposition testimony of Maria Yip in said case; the taking of depositions
> of several not party's to this action, those being the parties to the aforementioned
> case, and examining the results of this inquiry.

The bases for Frank's Motion [ECF 503] to continue the evidentiary hearing scheduled for

December 15, 2016, were bogus; the Motion was denied by Order [ECF 506] entered November

28, 2016. In the end, Frank chickened out: he failed to appear at the evidentiary hearing, and he

failed utterly to produce a shred of evidence in support of his bold and outrageous allegations of

fraud, collusion, negligence, and malfeasance. Trustee Yip and Comerica Bank appeared at the

---

[26] Judge Cristol subsequently withdrew all of his criticism of Trustee Yip but for his
determination that "prosecuting this case was a mistake." *See* Order [ECF 106] in Adv. Pro.
14-1574, entered January 31, 2017.

trial and established by overwhelming evidence [27] that Frank's multifarious allegations of misconduct were flat-out baseless and false.

Accordingly, the Court denied the Motion for Relief from Orders for Fraud on the Court [ECF 497] with prejudice by Order [ECF 529] entered December 19, 2016. Trustee Yip's Objections [ECF 351] to the El Mar, Oceanside, and Frank Claims 17, 18, and 19 were sustained by Orders [ECF 527, 528] entered December 19, 2016, and those Claims were disallowed in their entirety.

Frank timely moved under Bankruptcy Rule 9023 (applying Fed. R. Civ. P. 59) by Motion [ECF 539] filed January 3, 2017, to reconsider various substantive and procedural Orders [ECF 526, 527, 528, 529, 531, 532, 533, and 534]. The Motion was based upon Frank's claim that a healthcare issue suffered by his roommate, which "resulted in Frank having ... a bout of severe panic and anxiety order [sic] which disabled him on December 15, 2016 and he was unable to appear in court to prosecute his claims." No supporting medical evidence regarding the alleged panic attack or his roommate's healthcare issue was filed with the Motion. Under applicable Eleventh Circuit precedent, "the only grounds for granting a [Rule 9023] motion are newly-discovered evidence or manifest errors of law or fact." *Jacobs v. Temper-Pedic Intern., Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). The events cited by Frank did not provide this Court with any newly discovered evidence or point to any manifest error of fact or law, and the Motion was accordingly denied by Order [ECF 540] entered January 5, 2017.

---

[27] The applicable standard in such cases is preponderance; the evidence here would satisfy a far more rigorous standard.

Frank timely filed Notices of Appeal [ECF 544, 548, 552] on January 17, 2017, from various Orders entered following the hearing on December 15, 2016. Each of the appeals was dismissed administratively by the Clerk [ECF 568, 569, 570] on February 1, 2017, as a result of Frank's failure to pay any of the filing fees associated with the Notices of Appeal and for failure to file timely a designation of items for the record on appeal or a statement of issues on appeal, all as "authorized and directed" by Local Rule 87.4 of the District Court. Orders entered by the Bankruptcy Court pursuant to Local Rule 87.4 "may be reviewed by the District Court on motion filed in the District Court within fourteen (14) days after entry of the order would to be reviewed pursuant to section (c) of this Local Rule." No such motions have been filed by Frank; the time to do so has now expired; and the various Orders entered by this Court as to which Frank sought appellate review are now final.

### Application of Controlling § 1927 Law to the Facts of this Case

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

There are three elements that must be satisfied for sanctions pursuant to 28 U.S.C. § 1927: (1) whether Frank qualifies as "any attorney or other person admitted to conduct cases," (2) whether this Court is considered "any court of the United States or any Territory thereof," and (3) whether Frank has "unreasonably and vexatiously multiplied the proceedings." Upon review of the facts and the relevant case law, it is clear that Frank is liable for such sanctions.

### 28 U.S.C. § 1927 Sanctions Can Apply to *Pro Se* Litigants in the Eleventh Circuit

Of course, Frank is decidedly *not* an attorney, even though his voluminous filings may give the appearance of being authored by someone who has studied, or at least parroted,[28] the practice of law. A plain reading of 28 U.S.C. § 1927 would appear to limit these sanctions to attorneys and other legal professionals, but, as Frank himself acknowledged, Eleventh Circuit case law has at least extended the application of 28 U.S.C. § 1927 to "litigants." *Smartt, supra,* 245 F. Supp. 2d at 1229. In that case, the court noted that the "Eleventh Circuit has not explicitly addressed the issue of whether attorney's fees may be awarded against *pro se* litigants, but has stated that Section 1927 allows district courts to 'assess attorney's fees against *litigants*, counsel and law firms who willfully abuse the judicial process by conduct tantamount to bad faith.'" *Id.* at 1235, *citing Crenshaw v. City of Defuniak Springs,* 891 F. Supp. 1548, 1559 (N.D. Fla. 1995) (*quoting Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991), *cert denied*, 502 U.S. 1048 (1992)) (emphasis in original).   Accordingly, the Eleventh Circuit has left the door open for § 1927 sanctions to be applied to *pro se* litigants, which comports with the purpose of § 1927: to "deter frivolous litigation and abusive practices . . . and to ensure that those who create unnecessary costs bear them." *O'Rear v. American Family Life Assurance Co. of Columbus, Inc.*, 144 F.R.D. 401, 413 (M.D. Fla. 1992).

An attorney has the *ability* and requisite knowledge to multiply proceedings vexatiously, but various ethics rules[29] and, one hopes, a sense of professionalism[30] generally prevent such

---

[28] It has come to the Court's attention that Frank was arrested on March 10, 2017, for misrepresenting himself as qualified to practice law (§ 454.23, Fla. Stat.), simulating legal process in fraudulent actions (§ 843.0855-3, Fla. Stat.), and various other fraud and grand theft charges. At the time of this filing, Frank remains incarcerated at the Joseph V. Conte Facility in Pompano Beach, Florida, a medium-security facility operated by the Broward County Sheriff's Office primarily to house inmates awaiting trial.

[29] *See, e.g.,* R. Regulating Fla. Bar 4-3.1 Meritorious Claims and Contentions ("A lawyer

practices from proceeding into the realm of action sanctionable by § 1927, to where Frank has

clearly traveled. The ethics rules that deter frivolous and vexatious filings by attorneys have no

effect on a non-attorney litigant, and this Court reaches the conclusion that no other order could

possibly rein in Frank's litigious nature. This Court finds that Frank is the quintessential *pro se*

litigant displaying a "serious and studied disregard for the orderly processes of justice"; lacking

any other mechanism to stay the onslaught of frivolous filings, this Court's power to impose

sanctions under § 1927 should be exercised and extended to this *pro se* litigant. *See Jerelds v. City

of Orlando*, 194 F. Supp. 2d 1305, 1312 (M.D. Fla. 2002). This Court would certainly welcome

review of this determination by the Eleventh Circuit to provide Circuit clarity as to whether § 1927

sanctions may definitively be imposed against a *pro se* litigant; if there was ever a time to extend

such sanctions to a litigant proceeding *pro se*, now would be that time.

### The Bankruptcy Court Is a "Court of the United States"

The specific language of § 1927 provides that a "court of the United States" may impose

sanctions under this section. Some case law[31] from other circuits holds that Bankruptcy Courts are

not "courts of the United States" within the meaning of 28 U.S.C. § 451.[32] The Eleventh Circuit

has held in other contexts that bankruptcy courts are not "courts of the United States" and that only

---

shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a
basis in law and fact for doing so that is not frivolous, which includes a good faith argument or
extension, modification, or reversal of existing law."); 4-3.2 Expediting Litigation ("A lawyer
shall make reasonable efforts to expedite litigation consistent with the interests of the client.").

[30] No rules of professional conduct that govern attorneys apply to Mr. Frank; thus, they
have no deterrent effect whatsoever on his actions.

[31] *See In re Courtesy Inns, Ltd.*, 40 F.3d 1084 (10th Cir. 1994); *In re Perroton,* 958 F.2d
889 (9th Cir. 1992).

[32] The term "court of the United States" includes the Supreme Court of the United States,
courts of appeals, district courts constituted by chapter 5 of this title, including the Court of
International Trade and any court created by Act of Congress the judges of which are entitled to
hold office during good behavior.

an Article III court can exercise the authority delegated in a variety of federal statutes, perhaps (by implication) including § 1927. *See In Re Brickell Inv. Corp.*, 922 F.2d 696 (11th Cir. 1991), *see also In re Davis*, 899 F.2d 1136 (11th Cir. 1990). This Court believes that this case law cannot, however, apply to § 1927, and that the structure of § 1927 makes that clear.

On its face, § 1927 applies to "cases in any court of the United States or any Territory thereof." So-called Article III courts—the Supreme Court expressly created by Article III of the Constitution, as well as the circuit and district courts created by Act of Congress, the judges of which are appointed by the President, confirmed by the Senate, and entitled to hold office during good behavior—are clearly courts of the United States for purposes of § 1927. But judges of the United States District Courts for the territories of the United States, who also have express authority to impose sanctions under § 1927, are ***not*** appointed by the President, confirmed by the Senate, nor entitled to hold office during good behavior. Rather, judges of the United States District Court for the Territories are appointed by the President and confirmed by the Senate for a term of 10 years "unless sooner removed by the President for cause." 48 U.S.C. § 1424b (a). (District Court of Guam). Such judges are not appointed by virtue of the authority of the Congress to create inferior courts under Article III, but rather under the Constitution's grant of authority to Congress under Article IV, Section 3, Clause 2 "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." *See, e.g.,* 48 U.S.C. § 1424(b) (creating the United States District Court for the Territory of Guam); 48 U.S.C. § 1614 (creating the United States District Court for the Territory of the Virgin Islands); 48 U.S.C. § 1821(b) (creating the United States District Court for the Territory of the Northern Mariana Islands).

40

It is thus clear that § 1927 cannot be read to require that its sanction powers can only be exercised by an Article III judge.

The question of the exercise of § 1927 powers by the bankruptcy court has previously been addressed in this District in an order by visiting Bankruptcy Judge Thomas S. Utschig. *See In re Lawrence*, No. 97-14687-AJC, 2000 WL 33950028 (Bankr. S.D. Fla. 2000). In that case, Judge Utschig was persuaded by the reasoning presented by several cases[33] holding that, for purposes of § 1927, bankruptcy courts are in fact *divisions* of district courts and thus have the same authority to, *inter alia*, impose sanctions as district courts. As Judge Utschig ruled in *Lawrence*:

> While the objecting parties argue that *Brickell Inv. Corp.* and *Davis* are binding precedent which cannot be ignored, the Court is mindful of the fact that neither decision considers the analysis which is subsequently put forth in both *Grewe* and *Brooks*. *See Brooks*, 175 B.R. at 412. In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.* 458 U.S. 50 (1982) [other citations omitted] the Supreme Court held that Congress had "impermissibly removed" essential attributes of judicial power from the Article III district courts and vested those powers in Article I bankruptcy courts which were "functionally independent" from the district court. *Id*. at 87. [other citations omitted]. In response to the ruling that this system was unconstitutional, Congress altered the bankruptcy code and made bankruptcy courts 'units of the district court' pursuant to 28 U.S.C. § 151.[34]
>
> Unlike the Tax Court or other such Article I Courts, bankruptcy courts do not exist as separate and distinct judicial entities. All bankruptcy jurisdiction flows from the district court, which "refers" matters to the bankruptcy courts. As the *Grewe* court states, Congress intended that this jurisdictional scheme would "remedy the problems depicted in *Marathon* by eliminating the 'functional independence' of the bankruptcy court, and instead making it a mere division of the district court." 4 F.3d at 304. Under this structure, federal district courts exercise original jurisdiction

---

[33] See *In re Grewe*, 4 F.3d 299 (4th Cir. 1993), *cert denied*, 501 U.S. 1112 (1994); *In re Brooks*, 175 B.R. 409 (Bankr. S.D. Ala. 1994).

[34] "In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.  Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court." 28 U.S.C. § 151.

over *all* "matters and proceedings in bankruptcy," 28 U.S.C. § 1334, and bankruptcy judges "serve as judicial officers of the United States District Court established under Article III of the Constitution." 28 U.S.C. § 152(a)(1). Bankruptcy matters are then referred to the bankruptcy courts from the district courts.  28 U.S.C. § 157.  Fur jurisdictional purposes, however, there is only one court–the district court. *Grewe*, 4. F.3d at 304, *see also In re Yochum*, 89 F.3d 661, 668 (9th Cir. 1996) ("because bankruptcy courts are units of the district court, they are covered under [the statute's 28 U.S.C.] [§ 451] aegis").

As such, the bankruptcy court's ability to award sanctions under 28 U.S.C. § 1927 flows from its jurisdictional relationship with the district court. The district courts are clearly "courts of the United States," and bankruptcy courts operate as units or divisions of that court. The failure to denominate bankruptcy courts in § 451 is irrelevant because, unlike the Tax Court and the Claims Court, bankruptcy courts do not exist for jurisdictional purposes outside the umbrella of the district court. *Grewe*, 4 F.3d at 304-5; *In re Chambers* 140 B.R. 233, 237 (N.D. Ill. 1992). Accordingly, the Court concludes that the trustee may seek an award of sanctions under this provision.

*Lawrence* got it right: bankruptcy courts operate as units or divisions of the district courts; are, therefore, under the jurisdictional umbrella of the "courts of the United States"; and may, therefore, impose sanctions pursuant to § 1927. This is entirely consistent with the Eleventh Circuit's repeated holdings that bankruptcy courts have the power to assess sanctions pursuant to their inherent powers. *See, e.g., In re Mroz*, 65 F.3d 1567 (11th Cir. 1995).

### Whether Frank Violated 28 U.S.C. § 1927

Having determined that § 1927 is applicable to Frank as a *pro se* litigant and that this Court has the statutory power to impose sanctions pursuant to § 1927, the analysis turns to whether or not Frank actually violated § 1927.

Section 1927 has three essential requirements: (1) the litigant must engage in unreasonable and vexatious conduct, (2) the unreasonable and vexatious conduct must multiply the proceedings, and (3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). As the dollar amount of the

sanction has yet to be determined by this Court (but it will be reasonable excess costs, expenses, and attorneys' fees incurred as a result of Frank's conduct),[35] the key inquiry here is two-fold: whether Frank's conduct was unreasonable and vexatious, and whether that conduct multiplied the proceedings.

As this lengthy order has provided in excruciating detail, Frank has inexorably multiplied these proceedings, dragging them on for years more than they should have taken, in a completely unreasonable, vexatious, and nonsensical manner. In this case (and associated adversary proceedings), Frank has, *inter alia*:[36]

- Routinely tried to represent corporate entities on a *pro se* basis despite repeated rulings that such representation was prohibited.

- Unreasonably obstructed a reasonable Chapter 11 plan to the point that conversion to Chapter 7 was required.

- Failed to timely request or conduct discovery and subsequently complained that there had been no discovery.

- Botched an appeal deadline.

- Asserted, for the first time on (purported) appeal, that Comerica had committed fraud and fraud on this Court without *any* evidence.

- Filed, and amended, a purported claim on behalf of El Mar on the basis of an underlying state court complaint, to which El Mar was not a party.

- Filed, and amended, a nonsensical claim on behalf of Oceanside.

- Failed to prosecute any conceivably related state court litigation.

---

[35] The appropriate dollar amount is reasonable excess costs, expenses, and attorneys' fees incurred as a result of Frank's unreasonable and vexatious multiplication of these proceedings.   In order to properly determine that amount, this Court will direct the Trustee to provide an accounting of such costs and give Frank the opportunity to contest that accounting.

[36] Some of Frank's doings have required direct intervention by this Court, as they have been framed as requests for relief. Other actions have simply extended the duration of litigation needlessly.

- Repeatedly filed documents so voluminous, winding, and fantastical that reviewing each one was an adventure of Baumian proportions.[37]

- On numerous occasions, and without merit, accused the Trustee of breaching her fiduciary duties and perpetrating fraud on the Court and the Debtor's estate.

- Somehow, in his outlandish calculation of damages, performed the following:
  4,392 + 500,000 + (3 x 600,000) + (10 x 4,392,000) = 4,392,000.

- Appealed an order disallowing an election of a trustee, even though he had not sought to participate in the election. Such an appeal was determined to be "frivolous" by Judge Zloch; Frank appealed that order to the Eleventh Circuit, another fruitless endeavor; and the Court of Appeals affirmed on the basis of Judge Zloch's opinion.

- Frivolously moved to disqualify this Court on four absurd bases, and his appeal was found to be unsupported, irrational, and highly tenuous speculation.

- Filed an outrageous complaint against the Trustee in the wrong forum, and, after a hearing at which the Court found his complaint was baseless, filed a *258-page* motion supported by a *280-page* document, both of which were stricken.

- Filed a baseless and absurd *304-page* complaint against the Trustee, and, after an Order to Show Cause relating to Section 1927 sanctions, filed a *204-page* motion alleging that the Trustee had engaged in fraud on the court.

- Failed to make pre-trial disclosures.

- Failed to perform any other pre-trial requirements.

- Failed to appear at a pre-trial conference, and failed to appear at trial.

- Filed pointless appeals that were soon dismissed by the Clerk's office for failing to pay the filing fees.

---

[37] L. Frank Baum's seminal work, *The Wonderful Wizard of Oz*, follows a young farm girl named Dorothy on her adventures along a yellow brick road in the magical land of Oz. Along her way, Dorothy is joined by a tin man who is in search of a heart, a cowardly lion who seeks courage, and a scarecrow who lacks a brain. The team encounters all sorts of troublesome nonsense, from flying monkeys to opiatic flowers to ornery doormen. In the end, Dorothy finds that there really is no place like home and suddenly awakens back in her bed in Kansas: it had all been just a dream. If only the same could be said about each and every frivolous filing from Frank.

- Failed to provide a scintilla of evidence in support of his bold and outrageous allegations of fraud, collusion, malfeasance, nonfeasance, negligence, and gross negligence at any time since the inception of this case.

As described in detail throughout this order, this case has been clogged with unreasonable emotions and appeals filed by Frank, none of which had sufficient basis in law or in fact. Although Frank claimed to have documentary evidence in support of his allegations, not a single such document was ever produced.  Those frivolous and often outrageous actions have repeatedly multiplied these proceedings. This type of behavior cannot be allowed to continue and cannot be ignored.  Each and every time that Frank filed a preposterous motion, this Court and the Trustee were inevitably forced to follow Frank "through the looking glass" and "down the rabbit hole,"[38] where Frank believes that some broad conspiracy has been  foisted upon him by the Trustee. In reality, the only conspiracy here seems to be one of Frank's creation: if he won't get paid, then he will drain the assets of the estate to the point that no unsecured creditor will get *anything*, even though the *deus ex machina* appeared in this saga in the form of an unexpected $17 million purchase back in 2013. The curtain should have fallen then.

This Court accordingly finds it appropriate, and even necessary, to sanction Frank pursuant to § 1927. If such sanctions are not appropriate here, then *pro se* litigants truly have a free pass to unreasonably and vexatiously multiply proceedings to the detriment of all parties involved, including the judiciary and the public at large.

---

[38] In *Alice's Adventures in Wonderland* (Lewis Carroll, 1865), a girl named Alice falls down a rabbit hole and enters a strange world filled with such creatures as a tardy rabbit, a chain-smoking caterpillar, and a Hatter sentenced to death for "murdering time." Alice searches for her way home, but an unfortunate incident involving croquet, roses, and a devious cat ironically lead her to a trial where she can *produce no evidence whatsoever*. As with the *Wizard of Oz*, this tale is revealed to be nothing but a girl's dream, and all is well in the real world. Unfortunately, there is no "waking up" from the nightmare that Frank has caused this Court, the Trustee, and the estate.

**Conclusion**

Frank's conduct over the last three years of this case consists of an ever-escalating assertion of misconduct by Trustee Yip, beginning with questions first raised by Frank, El Mar, and Oceanside by Cross-Motion [ECF 244] on March 28, 2014, concerning whether Comerica Bank had properly accounted for payments made to it by the Debtor under an interest rate swap agreement and whether Comerica had properly accounted for "any 'profit'" on its disposition of allegedly cross-collateralized property.   These perfectly appropriate questions did not allege any wrongdoing by Comerica or the Trustee and were raised in the context of Comerica's Motion [ECF 228] seeking determination of the amount and allowance of its secured claim.

Beginning in July 2014, however, Frank's counsel's reasonable questions about Comerica's secured position morphed into gross allegations of fraud, collusion, nonfeasance, and misfeasance lodged by Frank *pro se* against Trustee Yip. Each of the initial questions regarding Comerica's secured status was fully and completely answered in unrebutted evidence. And each of Frank's later allegations was proven to be baseless and false; fact-free "alternative facts" which were, like most "alternative facts," nothing more nor less than lies and innuendo.

Meanwhile, three years of litigation have cost the estate, Trustee Yip, the estate's professionals, and this Court uncounted hours of pointless work and aggravation. This Court gave Frank opportunity after opportunity to stop his evidence-free assertions of wrongdoing; the "Come to Jesus" talk that this Court gave to Frank at the hearing on June 29, 2016, [ECF 494, p. 30, l.6– p. 33, l.7] was the clearest advice this Court can imagine any judge anywhere giving to a litigant to straighten up and fly right.[39]

---

[39] Nat King Cole and Irving Mills, *Straighten Up and Fly Right*, 1943:

Frank didn't.

It is beyond question that Frank has acted in complete bad faith and has multiplied the proceedings in this bankruptcy case and related Adversary Proceeding 16-1248 unreasonably and vexatiously within the meaning of 28 U.S.C. § 1927.   Frank is, accordingly, personally liable for the excess costs, expenses, attorneys' fees and other damages reasonably incurred because of his misconduct.

Accordingly, based upon the foregoing, it is

**ORDERED:**

1. Kenneth A. Frank is hereby **DETERMINED** to have acted in bad faith and to have unreasonably and vexatiously multiplied these proceedings to such a degree that he is personally liable for the excess costs, expenses, and attorneys' fees reasonably incurred as a result pursuant to 28 U.S.C. § 1927.

2. Except as provided herein, Kenneth A. Frank is hereby **PROHIBITED** from filing any pleading or other paper in the main bankruptcy case of Ocean 4660, LLC, without prior written Order of this Court granting him permission, in each instance, to file such a pleading or paper.

3. Except as provided herein, Kenneth A. Frank is hereby **PROHIBITED** from filing any

---

A buzzard took a monkey for a ride in the air.
The monkey thought that everything was on the square.
The buzzard tried to throw the monkey off his back.
The monkey grabbed his neck and said, "Now listen, Jack,
Straighten up and fly right, straighten up and fly right,
Straighten up and fly right, cool down papa, don't you blow your top.
Ain't no use in divin'. What's the use of jivin'?
Straighten up and fly right, cool down, papa, don't you blow your top."
The buzzard told the monkey, "You are chokin' me!
Release your hold and I'll set you free."
The monkey looked the buzzard right dead in the eye and said
"Your story's so touching, but it sounds like a lie."

Adversary Proceeding or Contested Matter arising in, arising under, or related to the bankruptcy case of Ocean 4660, LLC, without prior written Order of this Court granting him permission, in each instance, to file such a pleading or paper.

4. Except as provided herein, the Clerk is hereby **DIRECTED** to refuse to accept for filing any pleading or paper submitted by Kenneth A. Frank without prior written Order of this Court granting him permission, in each instance, to file such a pleading or paper.

5. Trustee Yip is **DIRECTED** to file and serve, within 21 days of the date of entry of this Order, an accounting (the "Accounting") for costs, expenses, and attorneys' fees incurred as a result of Kenneth A. Frank's unreasonable and vexatious multiplication of these proceedings.

6. Kenneth A. Frank is **AUTHORIZED** to file and serve a Response to the Accounting within 14 days of its filing.   Kenneth A. Frank is expressly authorized to file such a Response, and the Clerk shall accept it for filing.

7. Trustee Yip is **AUTHORIZED** to file and serve a Reply to the Response within 14 days of its filing.

8. Kenneth A. Frank is hereby **AUTHORIZED** to file a motion under Bankruptcy Rule 9023 or 9024 addressed to this Order, and is further **AUTHORIZED** to file papers under Part VIII of the Bankruptcy Rules addressed to this Order, and the Clerk shall accept such paper(s) for filing.

9. The Court will, in its discretion, set the Accounting, Response, and Reply for hearing or rule upon the papers.

###

The Clerk is directed to send copies to counsel of record by CM/ECF and by U.S. Mail to Kenneth A. Frank at his address of record and to the facility at which he is being held: Kenneth A. Frank, Arrest Number 231700416, The Joseph V. Conte Facility, P.O. Box 407016, Fort Lauderdale, Florida 33340-7016.